Robert L. Sterup, Jr.
Kyle Anne Gray
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, MT 59103-0639
Telephone: (406) 252-2166
Facsimile: (406) 252-1669

Attorneys for Defendant Talen Montana, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STATE OF MONTANA,<br><br>    Plaintiff,<br><br>    v.<br><br>TALEN MONTANA, LLC and NORTHWESTERN CORPORATION, d/b/a NorthWestern Energy, a Delaware Corporation,<br><br>    Defendants. | Cause No. 6:16-CV-00035-CCL<br><br>**TALEN MONTANA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISMISSAL** |

Talen Montana, LLC ("Talen") formerly PPL Montana, LLC ("PPL") respectfully submits this memorandum of law in support of motion for dismissal of certain of the claims made by plaintiff State of Montana ("Montana") in its Complaint on Remand dated March 31, 2016.

## PROCEDURAL SUMMARY

A. <u>**State Court Proceedings**</u>

PPL acquired hydroelectric facilities from the former Montana Power Company in December 1999. Five of PPL's Montana facilities – Ryan, Cochrane, Morony, Rainbow, and Black Eagle – are located in a segment of the upper Missouri River known as the "Great Falls Reach." PPL's Holter and Hauser facilities are located on the Missouri River above the Great Falls Reach. The Madison facility and Hebgen storage reservoir are located on the Madison River. The Thompson Falls facility is located on the Clark Fork River.

In October 2003 private party plaintiffs brought suit against PPL and two other owners of hydroelectric projects, seeking compensatory relief on behalf of Montana's "school trust" for PPL's alleged occupation and use of allegedly State-owned riverbeds. Montana intervened in the federal action as party plaintiff. Thereafter, the claims of the private plaintiffs were dismissed. By stipulation, the federal action was dismissed based on lack of diversity jurisdiction.

PPL and the other affected hydroelectric project owners initiated this action in Montana First Judicial District in November 2004. Montana filed an Answer and Counterclaims dated November 24, 2004. In its Counterclaims, Montana sought a declaratory judgment that PPL owed compensation to Montana under Montana's Hydroelectric Resources Act ("HRA")(Count 1), and asserted

affirmative claims on theories of "uncompensated use of state land" (Count 2), "unjust enrichment" (Count 3), "trespass" (Count 4), and "negligence" (Count 5). In an October 2007 Final Pretrial Order Montana asserted claims under the HRA, for unjust enrichment and trespass, and under Article X section 11 of the Montana Constitution, while relinquishing its claim for negligence. Pretrial Order at pp. 17-18 ¶¶ 5-8.

Montana owns only those segments of the riverbeds between the low-water marks that were navigable for title at the time of Statehood. *PPL Mont., LLC v. Montana*, 132 S. Ct. 1215, 1228, 182 L. Ed. 2d 77, 2012 U.S. LEXIS 168 (Feb. 22, 2012)("Upon statehood, the State gains title within its borders to the beds of waters then navigable.")  In a pre-trial ruling the First Judicial District Court granted Montana's motion for summary judgment on navigability for title with respect to the rivers on which PPL's hydroelectric projects are located.  The Court did not consider or address a segment-by-segment approach to navigability for title, instead concluding that the entirety of the Missouri, Madison and Clarks Fork rivers were navigable at time of Statehood. *PPL Montana v. State of Montana*, 2010 MT 64, ¶ 24, 355 Mont. 402, 229 P.3d 421 ("the District Court granted summary judgment to the State, holding there were no genuine issues of material fact that the Clark Fork, Missouri, and Madison rivers were 'navigable in fact' at the time of statehood, and that the State was entitled to summary judgment on this

issue as a matter of law.")  Following an October 2007 bench trial, the First Judicial District Court issued findings of fact and conclusions of law dated June 2008, finding for Montana on its claims under Article X of the Montana Constitution and under the HRA.   In a March 2010 Opinion, the Montana Supreme Court affirmed the award of compensation under "Article X, Section 11(2) of the Montana Constitution" and the "HRA, title 77, chapter 4, part 2, MCA." *PPL Montana v. State of Montana*, 2010 MT 64, ¶¶ 116-117, 133, 355 Mont. 402, 229 P.3d 421.  While reversing the District Court's conclusion that "the riverbeds were school trust lands …," the Montana  Supreme Court ("MSC") found that "the District Court was correct in concluding that the riverbeds are public trust lands pursuant to Article X, Section 11(1) of the Montana Constitution."  *Id.* ¶ 116. [1]   *See also Id.* ¶ 170 (Court held that the "HRA was the 'general law'… used to assess damages….")  In so doing the Montana Supreme Court affirmed the District Court's navigability rulings based on a "whole river" analysis. *PPL Montana v. State of Montana*, ¶97-112.

---

[1]    "We reverse the District Court's determination that the riverbeds are school trust lands, and hold instead that they are public trust lands under Article X, Section 11(1) of the Montana Constitution. Although we conclude the riverbeds at issue are not school trust lands, the Land Board is still required to administer these lands in accordance with the trust obligations imposed by Article X, Section 11 of the Montana Constitution." *Id.* ¶ 117.

## B. United States Supreme Court Opinion

The U.S. Supreme Court ("SCOTUS") accepted certiorari and, by Opinion dated February 22, 2012, reversed. *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 182 L. Ed. 2d 77, 2012 U.S. Lexis 1686. In a unanimous opinion, SCOTUS held that the "Montana Supreme Court's ruling that Montana owns and may charge for use of riverbeds across the State was based upon an infirm legal understanding of this Court's rules of navigability for title under the equal footing doctrine." *PPL*, 132 S. Ct. at 1235. SCOTUS based its ruling on three principal factors.

*First*, "[t]o determine title to a riverbed under the equal-footing doctrine, this Court considers the river on a segment by-segment basis to assess whether the segment of the river, under which the riverbed in dispute lies, is navigable or not." *Id.* at 1229. SCOTUS held that the MSC erred in "decid[ing] that the segment-by-segment approach is inapplicable" where the MSC wrongly concluded it "does not apply to 'short interruption[s] of navigability in a stream otherwise navigable.'" *Id.* at 1230 quoting *PPL*, 355 Mont., at 442, 229 P. 3d, at 449. *Second*, SCOTUS held that "[t]he Montana Supreme Court further erred as a matter of law in its reliance upon the evidence of present-day, primarily recreational use of the Madison River." *Id.* at 1233. *Third,* concluding that Montana's "suggest[ion] that denying the State title to the riverbeds here in dispute will undermine the public trust doctrine … underscores the State's misapprehension of the equal footing and public

5

trust doctrines," *Id.* at 1234, SCOTUS held that "States retain residual power to determine the scope of the public trust over waters within their borders, while **federal law determines riverbed title** under the equal-footing doctrine." *Id.* at 1235 (emphasis supplied).

SCOTUS remanded for "further proceedings not inconsistent with this opinion," *Id.* at 1235, directing that "upon remand, the relevant evidence should be assessed in light of the principles discussed in this opinion." *Id.* at 1233.

### C. The Great Falls Reach

In an extensive discussion critical to its core holding, SCOTUS conclusively addressed navigability for title under federal law for the "Great Falls Reach," *Id.* at 1222-1224, encompassing PPL's hydroelectric facilities at Ryan, Cochrane, Morony, Rainbow, and Black Eagle. Noting that "[o]n the Upper Missouri River, PPL has seven hydroelectric dams," and that "[f]ive of them are along the Great Falls reach," *Id.* at p. 1224, SCOTUS held that *non*-navigability was established as a matter of law in "the Great Falls reach, which is 17 miles long and has distinct drops including five waterfalls and continuous rapids in between." *Id.* at 1231. Rejecting the decision of the MSC finding that "the Great Falls reach was navigable because it could be managed by way of land route portage," *Id.* citing *PPL*, 355 Mont., at 440, 442, 229 P. 3d, at 447, 449, SCOTUS held that "portages may defeat navigability for title purposes," and that "[t]his is such a case, at least

6

as to the Great Falls reach." *Id.* In an unequivocal ruling by a unanimous Court, SCOTUS held that "[e]ven if the law might find some nonnavigable segments so minimal that they merit treatment as part of a longer, navigable reach for purposes of title under the equal-footing doctrine, it is doubtful that any of the segments in this case would meet that standard, and one – the Great Falls reach – certainly would not.*" Id.* at 1230. "Thus, the Montana Supreme Court was wrong to state, with respect to the Great Falls reach and other stretches of the rivers in question, that portages 'are not sufficient to defeat a finding of navigability.'… In most cases, they are, because they require transportation over land rather than over the water. This is such a case, at least as to the Great Falls reach." *Id.* at 1231. In language that leaves no room for interpretation, SCOTUS held:

> [T]he Court now **concludes**, contrary to the Montana Supreme Court's decision, **that the 17-mile stretch Great Falls reach**, at least from the head of the first waterfall to the foot of the last, **is not navigable** for purposes of riverbed title under the equal-footing doctrine.

*Id.* at 1232 (emphasis added).

### D. Proceedings on Remand

Following remand to the Montana First Judicial District Court in April 2012, PPL filed a bill of costs, adjudicated in part by the District Court, while awaiting indication whether Montana intended to renew its claims. In November 2014, PPL transferred ownership of the hydroelectric properties to NorthWestern Corporation

7

d/b/a NorthWestern Energy ("NorthWestern"). Following a nearly four-year hiatus, new counsel for Montana expressed intent to move forward in early 2016. In March 2016, by stipulation and joint motion Montana and Talen notified the First Judicial District that PPL Montana, LLC had changed its name to Talen Montana, LLC in a spin-off transaction that did not involve a transfer, assignment or sale of any rights or interests related to PPL Montana's assets, and asked the First Judicial District Court to modify the case caption to reflect the name change while confirming that the name change should have no impact on the parties or this lawsuit. Talen and Montana further stipulated and joint moved to realign Montana as party plaintiff, and for bifurcation of threshold navigability-for-title from other issues in the case, with navigability to be tried to conclusion before any other issues are adjudicated. The First Judicial District granted the joint motion by Order dated March 29, 2016.

On March 31, 2016, Montana as party plaintiff filed a Complaint on Remand ("Complaint") naming Talen and NorthWestern as defendants and asserting three causes of action. Count One seeks a declaratory judgment that the hydroelectric facilities occupy State lands and the State is entitled compensation. Count II seeks relief under the HRA, the Montana Constitution, and unspecified Montana statutes. In Count III Montana seeks relief on a theory of unjust enrichment. In its

Complaint Montana expressly seeks recovery for the Great Falls Reach. Complaint ¶¶ 28-32, 37.

## DISCUSSION

### A. Rule 12

Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). While, as a general rule, a district court may not consider any material beyond the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, the court may consider matters of public record or material properly submitted as part of the complaint. *Wittman v. CB1, Inc.*, 2016 U.S. Dist. LEXIS 47792 *5 (D. Mont. 2016) *citing Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Because application of the "mandate rule" requires only a review of the Plaintiff's complaint (filed March 31, 2016) and the SCOTUS decision (dated February 22, 2012), Rule 12 dismissal is proper under the mandate rule. "In the Ninth Circuit, the mandate doctrine is construed as jurisdictional and 'if a district court errs by violating the rule of mandate, the error is a jurisdictional one.'" *Perrin v. Southwest Water Co.*, 2014 U.S. Dist. LEXIS 185165 *10 (C.D. Cal. 2014), *quoting United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007).

### B. The State's Claims For The Great Falls Reach Are Barred

#### 1. Mandate Rule

"The Mandate Rule directs that: 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 92 L. Ed. 1403, 68 S. Ct. 1039 (1947) *citing Ex parte Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 9 L. Ed. 1167 (1838); *Boyce's Ex'rs v. Grundy*, 34 U.S. (9 Pet.) 275, 9 L. Ed. 127 (1835); *The Santa Maria*, 23 U.S. (10 Wheat.) 431, 6 L. Ed. 359 (1825); *Himely v. Rose*, 9 U.S. 313, 5 Cranch 313, 3 L. Ed. 111 (1809). As the U.S. Supreme Court explained in Ex parte *Sibbald v. United States*:

> Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

37 U.S. at 492.

"When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was … disposed of by its decree, is considered as finally settled." *Thrasher*, 483 F. 3d at 981. *See also Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)("A trial court must implement both the letter and spirit of the mandate …."). "When a case has been

10

decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977). *See also United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)("the lower court must execute the mandate without hesitation.") "The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded.'" *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984), *quoting In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S. Ct. 291 (1895). *See also Duran Gonzales v. United States Dep't of Homeland Sec.*, 659 F.3d 930, 939 (9th Cir. 2011), overruled on other grounds, *Garfias-Rodriguez v. Holder,* 702 F.3d 504, 516 (9th Cir. 2012).

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The mandate rule applies to both factual and legal rulings. *Independence Park Apts. v. United States*, 61 Fed. Cl. 692, 699 (2004)("To the extent that any legal or factual issues are resolved by the Federal Circuit's reinstatement and accompanying analysis, the mandate rule applies, and this court is bound by the Federal Circuit's action.") *See*

*also Hash v. United States*, 2007 U.S. Dist. LEXIS 15539 *9 (D. Ida. 2007) ("the rule of mandate precludes a district court from … revisiting any final determinations unless the mandate allows it"), *citing Cote*, 51 F.3d at 181.

## 2.     **The Great Falls Reach**

The mandate rule bars Montana's claims for the Great Falls Reach, encompassing the hydroelectric dams at Ryan, Cochrane, Morony, Rainbow, and Black Eagle.  Because those claims have been definitively laid to rest by the U.S. Supreme Court, Montana may not reassert them on remand.

As noted above, SCOTUS extensively addressed, and conclusively resolved, navigability for title on the Great Falls Reach.   Finding "error" in the MSC's act of "discount[ing]the segment by-segment approach …," SCOTUS first noted  that "[t]he segment-by-segment approach to navigability for title is well settled…." *Id.* at 1229 quoting 355 Mont., at 440-442, 229 P. 3d, at 448-449.  SCOTUS then pointed out that governing segment-by-segment principles are "best illustrated by the Great Falls reach…." *Id.* at 1231.  Rejecting the MSC's decision that "the Great Falls reach was navigable because it could be managed by way of land route portage,"  SCOTUS noted "that very portage reveals the problem with the Montana Supreme Court's analysis." *Id.* citing 355 Mont., at 440, 442, 229 P. 3d, at 447, 449.  In so doing, SCOTUS cited and relied on incontrovertible, and conclusive, evidence in the record, including:

- "Leaving behind their larger boats, Lewis and Clark transported their supplies and some small canoes about 18 miles over land, which took at least 11 days and probably more. Even if portage were to take travelers only one day, its significance is the same: it demonstrates the need to bypass the river segment, all because that part of the river is nonnavigable." *Id.* at 1231.

- "Montana does not dispute that overland portage was necessary to traverse that reach. Indeed, the State admits 'the falls themselves were not passable by boat at statehood.'" *Id.* at 1232.

- "[T]he trial court noted the falls had never been navigated." *Id.* at 1232.

"Based on these statements," the unanimous Court "now concludes, contrary to the Montana Supreme Court's decision, that the 17-mile Great Falls reach, at least from the head of the first waterfall to the foot of the last, is not navigable for purposes of riverbed title under the equal-footing doctrine." *Id*. at 1232. Lest there be any doubt, and as noted above, the Court further held "[e]ven if the law might find some nonnavigable segments so minimal that they merit treatment as part of a longer, navigable reach for purposes of title under the equal-footing doctrine, it is doubtful that any of the segments in this case would meet that standard, and one – the Great Falls reach – certainly would not." *Id.* at 1230.

In sum, based on admissions of Montana and findings by the District Court that the Great Falls Reach was "not passable by boat" and "had never been navigated," but instead required arduous 18-mile portage, and applying the federal law test of navigability-for-title, SCOTUS has now held that the Great Falls Reach

13

"is not navigable for purposes of riverbed title under the equal-footing doctrine." *Id.* at 1232. SCOTUS had the final word and, under the mandate rule, the lower court "cannot vary ... or examine … or review … or intermeddle with" the U.S. Supreme Court's decision. *Beverly Hills Bancorp*, 752 F.2d at 1337. *See also Melaleuca, Inc. v. Hansen*, 2014 U.S. Dist. LEXIS 47092 *7 (D. Ida. 2014)("court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any other matter decided on appeal; or intermeddle with it,….") adopted 2014 U.S. Dist. LEXIS 47126 (D. Ida. 2014). Montana's invitation to re-litigate navigability of the Great Falls Reach on remand therefore must be rejected.

Any claim the SCOTUS decision somehow improperly adjudicated factual issues must fail. *See Martinez v. United States*, 669 F.2d 568, 570 (9th Cir. 1981) ("Under proper circumstances, an appellate court may order the district court to enter summary judgment for the nonmoving party."). The facts on which SCOTUS relied were firmly established in the record, and, indeed, cannot possibly be controverted. In addition to the land portage evidence expressly cited in support of its holding, SCOTUS further noted that the Missouri River "turns eastward through the Great Falls reach, cascading over a roughly 10-mile stretch of cataracts and rapids …" *Id*. at 1222, "'seriously obstructed by numerous rapids and rocks,'" *Id.* at 1223, with "five cascade-like waterfalls," and "[d]espite the falls' beauty,

Lewis could see that their steep cliffs and swift waters would impede progress on the river" because, among other things, "[a]s it moves downstream over the Great Falls reach … the river quickly descends about 520 feet in elevation … a 'constant succession of rapids and falls'…. (with) 'water … so swift … that buffalo were swept over the cataracts in 'considerable quantities' and were 'instantly crushed.'" *Id.* Any claim by Montana that SCOTUS improperly adjudicated navigability must fall to the mandate rule, which precludes" review … even for apparent error, upon any matter decided upon appeal …." *Duran*, 659 F. 3d at 695. *See also Integon Preferred Ins. Co. v. Isztojka*, 2011 U.S. Dist. LEXIS 45510 *19 (E.D. Cal. 2011)("This Court will not be so presumptuous as to assume that the Ninth Circuit … rendered a purely advisory opinion having no effect on the ultimate outcome.") As the Ninth Circuit has made clear, "a district court could not refuse to dismiss a case when the mandate required it …." *Thrasher*, 483 F. 3d at 981-82.

The mandate rule is subject to exceptions for "intervening controlling authority [which] makes reconsideration appropriate," *United States v. Jingles*, 682 F.3d 811, 820 (9th Cir. 2012), or "blatant error that would result in serious injustice if uncorrected." *United States v. Moore*, 83 F.3d 1231, 1234-35 (10th Cir. 1996). Neither exception applies here. Nor can Montana claim that "significant new evidence has come to light." *Moore*, 83 F. 3d at 1234-35. Evidence of navigability at time of statehood necessarily dates to 1889. Montana adduced its

15

evidence of navigability in support of summary judgment motion. SCOTUS comprehensively addressed the evidence and concluded the Great Falls Reach "is not navigable for purposes of riverbed title under the equal-footing doctrine." *Id.* at 1232.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Montana's claims for or pertaining to the Great Falls Reach, in accordance with the mandate of the United States Supreme Court.

DATED this 27th day of April 2016.

                                                HOLLAND & HART LLP

                                                /s/ Robert L. Sterup
                                                Robert L. Sterup
                                                Kyle Anne Gray

## **CERTIFICATE OF COMPLIANCE**

The undersigned, Robert L. Sterup, certifies that this Brief complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 3618 words, excluding caption, table of contents, table of authorities, and certificates of compliance and service. The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ Robert L. Sterup
Robert L. Sterup
Attorneys for Talen Montana, LLC

8713686_1