IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



FILED
OCT 10 2017
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| STATE OF MONTANA,<br><br>Plaintiff,<br><br>vs.<br><br>TALEN MONTANA, LLC, f/k/a PPL Montana, LLC, and NORTHWESTERN CORPORATION, d/b/a NorthWestern Energy, a Delaware Corporation,<br><br>Defendants. | CV 16–35–H–DLC–JCL<br><br><br>ORDER |

United States Magistrate Judge Jeremiah C. Lynch entered Findings and

Recommendations in this case on January 23, 2017, recommending denial of

Plaintiff the State of Montana's ("the State") Objection and Motion to Dismiss

Defendant Talen Montana, LLC's ("Talen") Consent to Removal (Doc. 14). Judge

Lynch further recommended granting the State's Motion to Remand (Doc. 12).

Both Talen and Defendant NorthWestern Corporation ("NorthWestern") timely

filed objections and are therefore entitled to de novo review of the specified

findings and recommendations to which they object. 28 U.S.C. § 636(b)(1). The

portions of the findings and recommendations not specifically objected to will be

-1-

reviewed for clear error. 28 U.S.C. § 636(b)(1)(A); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax,* 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

For the reasons stated below, Judge Lynch's Findings and Recommendations are adopted as to the State's Motion to Dismiss Talen's Consent to Removal. However, the Court rejects the Findings and Recommendations regarding the State's Motion to Remand.

## BACKGROUND

In 2003, PPL Montana, LLC ("PPL"), was sued by parents of Montana schoolchildren in the Missoula division of this Court based upon diversity jurisdiction. The plaintiffs alleged that PPL was operating hydroelectric facilities on state-owned riverbeds and argued that the riverbeds were part of Montana's school trust lands which entitled plaintiffs to compensation for PPL's use of the property. The parents were dismissed for lack of standing after the State intervened as a party plaintiff. PPL then moved to dismiss the case for lack of subject matter jurisdiction asserting that the State is not a citizen for purposes of diversity jurisdiction. The Court granted PPL's motion and dismissed the case.

In 2004, PPL filed suit in state court seeking a declaration that the State was not entitled to compensation for PPL's use of the riverbeds. The State counterclaimed seeking a declaration that it did own the riverbeds and was entitled to collect rent from PPL for their use. The state court granted summary judgment to the State. The state court found the riverbeds of the Clark Fork, Missouri, and Madison rivers were navigable and accordingly held that the State owned the riverbeds through navigability for title under the Equal Footing Doctrine. The Montana Supreme Court affirmed the state district court in *PPL Montana, LLC v. State of Montana*, 229 P.3d 421, 443 (Mont. 2010), concluding the rivers were navigable as a matter of law at the time of statehood in 1889, meaning the State acquired title to the riverbeds at that time under the Equal Footing Doctrine.

PPL petitioned the United States Supreme Court for a writ of certiorari, which was granted on the sole issue of whether the Montana Supreme Court erred in its application of the navigability for title doctrine. *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215 (2012). The Supreme Court reversed and remanded, holding that the Montana Supreme Court erred in disregarding the segment-by-segment approach to navigability for title, and by relying on evidence of present-day recreational use to assess navigability at the time of statehood. *Id.* at 1229, 1233–34.

In September 2013, NorthWestern entered into a purchase and sale

agreement for the acquisition of PPL's hydroelectric facilities in Montana,

including the facilities at issue here. (Doc. 1-1 at 4.) The acquisition was

approved by the Montana Public Service Commission in September 2014. *Id.* In

June 2015, PPL Montana, LLC changed its legal name to Talen Montana, LLC.

(Docs. 1-1 at 4; 13-3 at 2–3.)

Before further pursuing litigation, the State and Talen stipulated in late

March 2016 that the State would be realigned as the Plaintiff and Talen would be

realigned as the Defendant. (Doc. 13-3 at 3.) The parties also stipulated to

bifurcate issues of liability and damages, with all claims or defenses relating to

navigability at the time of statehood to be adjudicated first. *Id.* Six days later, on

March 31, 2016, the State filed its complaint on remand naming both Talen and

NorthWestern as Defendants. (Doc. 13-4.) The State asks for a declaration that it

owns the land occupied by Defendants' hydroelectric facilities and seeks to

recover rental payments.

On April 20, 2016, NorthWestern filed a notice of removal invoking this

Court's federal question jurisdiction. (Doc. 1.) Talen consented in writing to the

removal. (Doc. 1-3.) The State has since filed two motions challenging the

propriety of NorthWestern's removal and the subject matter jurisdiction of this

Court. First, the State filed a Motion to Remand (Doc. 12) arguing that NorthWestern has not met its burden of establishing federal question subject matter jurisdiction (Doc. 13). Second, the State filed an Objection and Motion to Dismiss Talen's Consent to NorthWestern's Notice of Removal (Doc. 14) asserting that Talen should be judicially estopped from consenting to removal based on federal question jurisdiction, meaning that NorthWestern cannot satisfy the requirement that all defendants consent to removal (Doc. 15).

## DISCUSSION

### I.    Motion to Dismiss Talen's Consent to Removal

The Court agrees with Judge Lynch that the State's Objection and Motion to Dismiss Talen's Consent to NorthWestern's Notice of Removal (Doc. 14) should be denied. No party objects to this finding and recommendation. Thus, reviewing for clear error, the Court finds none and this motion will be denied. Judge Lynch correctly concluded: 1) that the later-served defendant rule should apply to NorthWestern; 2) applying the waiver doctrine to an earlier-served defendant would prevent all defendants from consenting to removal which would deprive the later-served defendant of its right to remove and defeat the purpose of the later-served defendant rule; and 3) the litigation conduct of Talen, as the earlier-served defendant, has no effect on NorthWestern's right of removal under the later-served

defendant rule. (Doc. 144 at 9–13.)

## II.   Motion to Remand

The State asserts that remand is appropriate in this case because

NorthWestern, as Talen's successor in interest, is bound by Talen's choice of a

state forum and because the Defendants cannot demonstrate that this case arises

under federal law for purposes of federal question jurisdiction. (Doc. 13.)

Specifically, the State argues that neither the invocation of the Equal Footing

Doctrine itself nor the application of the navigability-for-title test under the Equal

Footing Doctrine are sufficient grounds for federal question jurisdiction. (*Id.* at

16–28.) Further, the State argues that Defendants have provided insufficient

evidence of a claim of interest by the United States in the property at issue to wrest

exclusive jurisdiction in this Court under the Federal Quiet Title Act ("FQTA").

(*Id.* at 28–32.)

Judge Lynch first concluded that NorthWestern was not bound by Talen's

choice of a state forum. (Doc. 144 at 17.) Second, Judge Lynch concluded that

Montana law creates the State's causes of action and even though the federal

constitutional Equal Footing Doctrine is implicated, it does not create the causes

of action and the implication alone is insufficient for establishing federal question

jurisdiction. (*Id.* at 20.) Third, Judge Lynch concluded that application of the

navigability-for-title test to the facts of this case does not "necessarily implicate any substantial federal issues" sufficient to establish federal question jurisdiction. (*Id.* at 35.) Lastly, Judge Lynch found that the Defendants could not establish that the United States claims an interest in the property at issue or that there is a dispute between the United States and the State as to title to the property, both of which are necessary for this Court to exercise exclusive jurisdiction under the FQTA. (*Id.* at 48.) For these reasons, Judge Lynch recommended granting the State's Motion to Remand. (*Id.* at 50.) Defendants object to this recommendation. (Docs. 154; 155.)

## A. Successor in Interest

The Court agrees with Judge Lynch's analysis and conclusion regarding the State's argument that remand is proper because NorthWestern is Talen's successor in interest and is therefore bound by Talen's original choice of a state forum. Neither party objects to this specific finding. Accordingly, this Court exercises clear error review. There is no clear error in Judge Lynch's conclusion that both Fed. R. Civ. P. 25(c) and Mont. R. Civ. P. 24(c) are inapposite because the State did not move to substitute or join NorthWestern under these rules. Instead, the State filed a complaint on remand naming both Talen and NorthWestern as defendants. (Doc. 13-4.) Accordingly, NorthWestern has its own right to initiate

removal. This Court finds no clear error in Judge Lynch's conclusion that

NorthWestern is not bound by Talen's choice of a state forum in 2004. (Doc. 144

at 17.) However, NorthWestern must still meet its burden of establishing that

removal is proper based on federal question jurisdiction.

## B.    Arising Under Federal Jurisdiction

The federal question statute gives the United States district courts original

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties

of the United States." 28 U.S.C. § 1331. A case "arises under" federal law for

purposes of § 1331 when the plaintiff (1) pleads a cause of action created by

federal law, or (2) pleads a state law claim which implicates "significant federal

issues." *Grable & Sons Metal Products, Inc. v. Darue Engraving &*

*Manufacturing*, 545 U.S. 308, 312 (2005). Under the well pleaded complaint rule,

whether a federal question is presented must be determined by looking to the face

of the plaintiff's complaint "unaided by the answer or by the petition for removal."

*California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004)

(quoting *Gully v. First National Bank*, 299 U.S. 109, 113 (1936)).

As to the first form of "arising under" jurisdiction, Judge Lynch concluded

that NorthWestern had not met its burden of showing that jurisdiction exists.

(Doc. 144 at 20.) Judge Lynch acknowledged that the Equal Footing Doctrine

-8-

plays a central role in this litigation, stating that "the State claims title to the disputed riverbeds based on the Equal Footing Doctrine." (*Id.* at 18.) However, Judge Lynch reasoned that although the Equal Footing Doctrine "is a creature of federal constitutional law," it does not create an independent cause of action. (*Id.* at 19.) Turning to NorthWestern's argument that the State must prove the navigability of the underlying riverbeds to be entitled to claim rent which necessarily implicates the Equal Footing Doctrine, Judge Lynch concluded that the implication was insufficient to create jurisdiction. (*Id.* at 20.) Finding that the State's state law claims certainly implicate the Equal Footing Doctrine, Judge Lynch held that the implication of a federal constitutional doctrine alone does not mean the claims are created by federal law "for the purposes of establishing federal question jurisdiction." (*Id.* at 20.) Judge Lynch concluded that the State's claims for compensation are created by Montana law, not federal law. Accordingly, Judge Lynch held that the first form of "arising under" jurisdiction was not satisfied because the State's complaint did not identify a federally created cause of action. (*Id.*)

Objecting to this specific finding, Defendants argue that this case arises under federal law because "Montana's title claim is conferred by the Constitution itself." (Docs. 155 at 23; 156.) Defendants assert that the State's claim for

declaratory relief is not a substantive right or cause of action in itself, but is the medium used to assert a substantive right created "exclusively from federal law" which equates to a determination of State ownership of the disputed riverbeds under the Equal Footing Doctrine. (Doc. 155 at 23–24.) This Court agrees.

When the vindication of a right under state law necessarily turns "on some construction of federal law," the claim arises under federal law for purposes of federal question jurisdiction and 28 U.S.C. § 1331. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983); *North Carolina v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017). As was recently addressed by the United States Court of Appeals for the Fourth Circuit in *North Carolina v. Alcoa Power Generating, Inc.*, the relevant question is "whether the right that [the State] seeks to vindicate—the right to title of riverbed land as determined by the river's navigability *vel non* at statehood—turns on construction of federal law." 853 F.3d at 146. This Court finds that it does. In order to be viable, the State's claims for compensation require a declaration that the State gained title to the lands at issue through a construction of the navigability for title test under the Equal Footing Doctrine. *PPL Montana, LLC v. Montana*, 565 U.S. 576, 587 (2012).

The United States Supreme Court has long recognized that title to navigable

waters and their riverbeds vested in each State are an "aspect of sovereignty obtained when separating from the British Crown and becoming a State." *Alcoa*, 853 F.3d at 147 (citing *Martin v. Waddell's Lessee*, 41 U.S. 367, 410 (1842)). When the revolution took place, the people of each state became sovereign and "in that character held the absolute right" to all their navigable waters and riverbeds for their common use, "subject only to the rights since surrendered" through the Constitution to the "general government." *Waddell's Lessee*, 41 U.S. at 410. In order to eliminate the distinction between states that acquired independence "by force of arms and those which acquired it by peaceful consent" of established states, the Constitution says the latter "must be admitted into the union on an equal footing with the rest." *Pollard's Lessee v. Hagan*, 44 U.S. 212, 216 (1845). Under the Equal Footing Doctrine, each State "receives absolute title to the beds of navigable waterways within its boundaries upon admission to the Union." *Oregon v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 372 (1977). The Supreme Court clarified that "the State's title to lands underlying navigable waters within its boundaries is conferred not by Congress but *by the Constitution itself*." *Id.* at 374 (emphasis added).

Under the Equal Footing Doctrine, navigability at the time the State joined the Union determines whether title passed to the State or "remained in the United

States." *United States v. Utah*, 283 U.S. 64, 75 (1931). "The question of navigability . . . is a federal question." *Id.* This is so even when the dispute concerns the factual sufficiency for a finding of navigability. *See Id.* When deciding the present case, the Court reiterated that "any . . . questions of navigability for determining state riverbed title are governed by federal law." *PPL Montana*, 565 U.S. at 591 (citing *Utah*, 283 U.S. at 75; *United States v. Oregon*, 295 U.S. 1, 14 (1935)). Federal jurisdiction flows from "the constitutional nature of state ownership of navigable waters" under the Equal Footing Doctrine. *Alcoa*, 853 F.3d at 149. Since the State cannot claim rents without a declaration that the rivers are navigable, the State's claims turn on the construction of federal law and there is federal question jurisdiction under 28 U.S.C. § 1331.

The State responds by arguing that the Equal Footing Doctrine does not create a cause of action and "simply" grants later-admitted states the benefit of the navigability in fact rule. (Doc. 160 at 10.) Navigability for title is the federal common law progeny of the navigability in fact rule. "The Court has explained the elements of this test" over a century of jurisprudence beginning with "a basic formulation" of the navigability in fact rule in *The Daniel Ball*. *See PPL Montana*, 565 U.S. at 590–95 (recalling and enumerating the evolution of the "navigability in fact" rule into the distinct "navigability for title" test used in this

case).  However, for the reasons stated above, the State's argument is

unpersuasive.  The State has pled causes of action that require the construction of

federal law: navigability for title.

Second, the State argues that Defendants confuse cases that arise under

federal law with cases that apply federal law.  (Doc. 160 at 11.)  The State claims

that this case merely applies federal law because it is "well established" that state

property law governs equal footing lands despite the "initial application of federal

law for determining navigability."  (*Id.*)  The State quotes *Oregon v. Corvallis*

*Sand and Gravel Co.*, 429 U.S. 363, 378–79 (1977), as support for this assertion:

> If the lands at issue did pass under the equal-footing doctrine, state
> title is not subject to defeasance and state law governs subsequent
> dispositions . . . . Under our federal system, property ownership is not
> governed by a general federal law, but rather by the laws of the
> several States.

(Doc. 160 at 11.)  However, the Court in *Corvallis Sand and Gravel* was deciding

whether federal common law continued to control title to property *after* title was

originally conferred to the State of Oregon under the Equal Footing Doctrine, not

whether title had been conferred at all.  In deciding this issue, the Court stated that

once title had vested under the Equal Footing Doctrine, "the force of that doctrine

was spent," and subsequent dispositions of title would be controlled by state law.

*Corvallis Sand and Gravel*, 429 U.S. at 371.  The Court then quoted *Wilcox v.*

*Jackson*, 38 U.S. 498, 499 (1839), to clarify that:

> [W]henever the question in any Court, state or federal, is, whether a
> title to land which had once been the property of the United States has
> passed, that question must be resolved by the laws of the United
> States; but that whenever, according to those laws, the title shall have
> passed, then that property, like all other property in the state, is
> subject to state legislation . . . .

*Corvallis Sand and Gravel*, 429 U.S. at 377. The State's argument puts the cart

before the horse. Here, the issue before the Court is "if the lands at issue did pass

under the equal-footing doctrine." *Id.* at 378. State law is inapplicable to the

determination of this question. Without federal law, the State's state law claims

are not viable.

For the foregoing reasons, the Court finds that the vindication of the State's

state law claims necessarily turn upon the construction of federal law and,

therefore, arise under federal law for the purposes of federal question jurisdiction

under 28 U.S.C. § 1331. Having jurisdiction over this matter on these grounds,

the Court refrains from addressing Judge Lynch's remaining Findings and

Recommendations on this subject.

Accordingly, IT IS ORDERED that Judge Lynch's Findings and

Recommendations (Doc. 144) are ADOPTED IN PART.

(1)    The State's Objection and Motion to Dismiss Talen's Consent to

-14-

NorthWestern's Notice of Removal (Doc. 14) is DENIED.

(2)    The State's Motion to Remand (Doc. 12) is DENIED.

DATED this 10th day of October, 2017.


_Dana L. Christensen_

Dana L. Christensen, Chief District Judge
United States District Court