IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STATE OF MONTANA,<br><br>              Plaintiff,<br><br>vs.<br><br>TALEN MONTANA, LLC, a Delaware Limited Liability Company, f/k/a PPL CORPORATION, d/b/a NorthWestern Energy, a Delaware Corporation,<br><br>              Defendants. | CV 16–35–H–DLC<br><br>ORDER |

NorthWestern Corporation and Talen (together Defendants) move the Court to join the United States as a necessary party under Federal Rule of Civil Procedure 19. (Doc. 192, 197). The State of Montana opposes this motion. (Doc. 198). The Court has read the parties briefs and conducted a lengthy hearing on February 8, 2019.

In reaching its decision, the Court has an interest not only in arriving at the right conclusion as a matter of law, but also in guiding this litigation efficiently. *See* Fed. R. Civ. P. 1. To the extent that the United States has an interest in this case, the Court wants that interest developed sooner rather than later. For the reasons explained more fully below, the Court will grant the motion. Because the

-1-

parties are familiar with the facts of this case, they will only be stated as necessary to understand this Court's Order.

## ANALYSIS

Under Rule 19(a)(1), a party is necessary, and joinder is required, if: (1) "in that [party's] absence, the court cannot accord complete relief among existing parties"; or (2) a party has an interest in the action and resolving the action in its absence may as a practical matter impair or impede that party's ability to protect that interest; or (3) if a party has an interest in the action and resolving the action in its absence creates a substantial risk that failure to join the party may leave an existing party subject to inconsistent obligations because of that interest. Fed. R. Civ. P. 19(a)(1); *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

Federal Rule 19 contemplates "entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 n.10 (1966). "Further, a court must protect the interests of the parties not before it to avoid possible prejudicial effect; failure of a court to protect those interests by joinder may amount to a violation of due process." *R. J. Williams Co. v. Fort Belknap Hous. Auth.*, 92 F.R.D. 17, 21 (D. Mont. 1981).

Defendants argue that joinder of the United States is necessary under each of

Rule 19's disjunctive requirements. Because this Court agrees that the United States has an interest in the litigation that runs a substantial risk of subjecting Defendants to incurring double or otherwise inconsistent obligations, the Court will not address Defendants' other arguments.

**I.   The United States Has a Legally Protected Interest in the Litigation**

Rule 19 requires that a purported necessary party have a legally protected interest in the pending litigation. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008). "This interest must be more than a financial stake, and more than speculation about a future event." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (internal citations omitted). However, the interest itself need "merely be a 'claim'—that is, '[j]ust adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party.'" *White v. Univ. of Calif.*, 765 F.3d 1010, 1029–30 (9th Cir. 2014) (quoting *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992)). A legally sufficient claim is one that is "nonfrivolous." *Id.* at 1030.

In *Makah Indian Tribe*, the Ninth Circuit found that a court's decision that would effectively reallocate a fixed or limited resource required the participation of absent neighboring tribes. 910 F.2d at 558. There, the Makah Tribe challenged

"federal regulation allocat[ing] the ocean harvest of migrating Columbia River salmon" where the regulation set lower harvest levels than those protected by treaty. *Id.* at 556. The Makah Tribe, one of twenty-three tribes covered by the treaty, challenged that the quotas imposed by regulation were unfair and violated their treaty rights. *Id.* at 557. Because the district court determined that the tribe was primarily seeking to reallocate harvest quotas, the district court sua sponte determined that the absent tribes were "necessary" parties and dismissed the suit. *Id.* The Tribe appealed, arguing that they only sought to enforce their own treaty rights and to increase the overall harvest quotas, and therefore their claims would not negatively impact any other tribe's interest. *Id.* However, the Ninth Circuit sided with the lower court. *Id.* at 559. The court reasoned that because the subject matter of the litigation was the allocation of salmon—which is a limited resource—any decision with regard to the Tribe would necessarily reduce the salmon available to other tribes. *Id.* Further, the court determined that those interests were not adequately protected by the federal government to the extent "those interests conflict among themselves." *Id.*

Here, Defendants argue that the United States has an interest in the outcome of this litigation because it asserts ownership and has charged rent to NorthWestern for its use of land that may be determined to be owned by the State in the course of litigation. Defendants argue that the United States has asserted this interest in

multiple ways, including participating as an amicus before the United States Supreme Court.

The State of Montana asserts that the only interest the United States has expressed in this litigation is the interest in advocating for a particular legal test and observes that the United States has not sought to enter this litigation as a party at any time during the now-sixteen years that this case has been pending. Further, the State contends that it does not seek conflicting title to any federal land, and the only question is whether various segments of the river were navigable at statehood. (Doc. 204 at 10 13 n.5 (stating that because the sole issue during this stage of litigation is whether certain segments of land passed to the State of Montana at statehood under the equal footing doctrine "there is no dispute between Montana and the United States[.]").) And, because the State plans to cooperate with the federal government in answering this question, it posits that there is no conflict of interest that would require the United States to join in the fray.[1]

This final argument is not persuasive. While it is true that there is no dispute over the proper legal standard, nor is there dispute over the outcome for purpose of title in the event certain segments of waters are determined to be

---

[1] This order is not intended to preclude cooperation between the State and the federal government; in fact, cooperation is encouraged. The Court can envision a situation where conflicting claims are identified, and written disclaimers negotiated and executed, leading to the stipulated dismissal of the federal government.

navigable, the question of navigability is a question of fact and the consequences of that question will determine which of two sovereigns may charge rent to NorthWestern for its use, enjoyment, and occupancy of that land. Here, as in *Makah Indian Tribe*, the United States has an interest in this litigation because the result will have the practical effect of allocating a fixed resource—title to land— between two sovereigns.

While the Ninth Circuit cautions that a "mere financial stake" in the outcome of litigation is not a sufficient interest to render a particular party "necessary," the interest here is greater—the United States has an interest in the rent that follows as a right of holding title to land, accompanied by the right to issue permits and regulate NorthWestern's use of various hydroelectric facilities.

While the State is correct that the Ninth Circuit instructs that a party's awareness of litigation and demonstrated lack of interest over a period of time is sufficient indication that the party has not "claimed" an interest in the subject matter of litigation, *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999), and would be dispositive of the question here, such is not the case. The United States *has* claimed an interest in this litigation by participating as an amicus before the United States Supreme Court. While the State asserts that the interest pursued was legal in nature and unrelated to the factual question at hand, it stands to reason that the United States had an interest in the legal test because of the impact that test

would have on its holdings as a landowner. *Amicus Br. of United States*, *PPL Montana, LLC v. State of Montana*, 2011 WL 3947562, *1 (2011) ("The United States has a significant interest in the resolution of [the legal] question," because "[t]he federal government owns riparian land throughout the Nation, including along the three rivers whose navigability is at issue in this case").

Despite the State's argument that it does not claim title to federal land and plans to "cooperate" with the federal government to determine the true title holder, this does not adequately diminish the interest that the United States has in the outcome of this litigation. As noted in *White*, the interest protected by Rule 19 is the interest in participating in the process. The question of navigability at trial is part of that adversarial process. If the United States is not present for that process, its interests will not be served.

## II. The Failure to Join the United States Subjects Defendants to a Substantial Risk of Incurring an Inconsistent Obligation

The State never argues that the Court's determination does not create the potential for an inconsistent obligation. It would have trouble doing so, as the inconsistent obligation arises under the equal footing doctrine. Under the equal footing doctrine, a state gains title to those waters which were navigable at the time of statehood, under a segment by segment analysis. *PPL Montana, LLC v. Montana*, 565 U.S. 576, 591 (2012). Because the United States was the original

landowner prior to statehood, land at issue here is either owned by the State or the federal government, but it cannot be held by both.[2]

Rather, the State of Montana seems to challenge that joinder is not required at this step because the risk of an inconsistent obligation is not "substantial." Specifically, the State argues: (1) it is not challenging federal title; (2) it plans to cooperate with the federal government to determine whether certain segments of the river were navigable at statehood; (3) the conflict, to the extent there is one, is "vague and indefinite"; and (4) the Court should not prematurely determine that the United States is a "necessary party" in the absence conflicting claims where there are procedural mechanisms to handle such conflict if and when it arises. The Court will take these arguments in turn.

The State's argument that it is not challenging federal title is a distinction without a difference. The question is whether the waters were navigable. Where there is room for disagreement on this point, the State's assertion of navigability has title consequences that may impact the United State's holdings. This argument is not well taken.

Second, the State's claim that it plans to cooperate with the federal

---

[2] At oral argument, it was suggested that riparian landowners in the area may also have conflicting interests with the State. However, their interests are not at stake in this litigation because they are not charging NorthWestern any rent. Thus, the interests of any riparian owners are immaterial to this analysis.

government is a compelling justification that the risk of conflict may not be "substantial," however its subsequent acknowledgment that the United States *could* become a necessary party in the future implicitly recognizes its potential. The question for the Court is whether the risk of conflict warrants the participation of the United States in a formal capacity, sooner rather than later. This leads to the State's third argument, that the risk is not significant, because if it were, Defendants would have pointed to "actual evidence" of a conflict instead of "vague and indefinite assertions." But this argument cuts both ways. Defendants claim they are unable to specifically identify competing claims of navigability because the State has not yet disclosed which segments of the river it believes were navigable at statehood. While the Court appreciates the State's argument that the extent of conflict may be "much ado about very little," the Court must do its best to ascertain the extent of conflicting claims with the information it has before it. On this point, the Court is persuaded by Talen's contention at oral argument that the grounds under the hydroelectric dams are likely to be at issue and finds this to be sufficient evidence of a "substantial risk" of inconsistent obligations in the event the United States is absent from the litigation.

The State's final point has some appeal. This Court could wait until discovery presents actual evidence that there are competing claims for title to add the United States as a "necessary" party. The State further observes that in the

event such a conflict arises, both sovereigns would have the opportunity to disclaim any land at issue. Defendants respond that waiting for an "actual conflict" is not required of Rule 19 and adding the United States later runs the risk of further delaying this litigation.

Having considered this question at length, the Court concludes that the risk of competing claims warrants the addition of the United States as a party defendant at the earliest possible time. This case has been pending for 16 years. In the interests promoting a "just, [and] speedy" resolution, the Court believes a small delay now is preferable to the potential for protracted delays that will arise in the event that the United States becomes a necessary party after significant discovery has taken place.

Therefore, the Court will require the State to amend its pleadings and name the United States as a party defendant under the Federal Quiet Title Act. 28 U.S.C. § 2409(a) (2018). In the event that the United States does not believe it has an interest in the claims before the Court, it can move to dismiss itself at the appropriate time.

Accordingly, IT IS ORDERED that Defendant NorthWestern Corporation's Motion for Joinder of Necessary Party Under Fed. R. Civ. P. 19 (Doc. 192) is GRANTED.

IT IS FURTHER ORDERED that the State of Montana is required to

Amend its Pleading to name the United States as a party defendant under the Federal Quiet Title Act. The State will have 60 days to do so.

DATED this 12th day of February, 2019.

_____
Dana L. Christensen, Chief Judge
United States District Court