Timothy C. Fox
MONTANA ATTORNEY GENERAL
Pat Risken
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT  59632
Telephone:  (406) 444-2026
edoj@mt.gov
prisken@mt.gov

John E. Bloomquist
Rick C. Tappan
BLOOMQUIST LAW FIRM. P.C.
3355 Colton Drive, Suite A
Helena, MT  59602
Telephone:  (406) 502-1244
blf@helenalaw.com

James P. Molloy
GALLIK, BREMER & MOLLOY, P.C.
777 East Main Street, Suite 203
P.O. Box 70
Bozeman, MT  59771-0070
Telephone:  (406) 402-1728
jim@galliklawfirm.com

*Attorneys for Plaintiff State of Montana*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| STATE OF MONTANA,<br><br>          Plaintiff,<br><br>vs.<br><br>TALEN MONTANA, LLC f/k/a PPL Montana, LLC, and NORTHWESTERN CORPORATION, d/b/a NorthWestern Energy, a Delaware Corporation, and United States of America, United States Forest Service, United States Bureau of Reclamation, and United States Bureau of Land Management<br><br>          Defendants. | CV 16-35-H-DLC<br><br><br>**STATE OF MONTANA'S<br>AMENDED COMPLAINT** |

1

The State of Montana through the Office of the Attorney General ("Montana") for its Amended Complaint against Defendants, alleges as follows:

## BACKGROUND

1.      At issue in this case is whether Montana owns title to submerged lands formerly occupied by PPL Montana, PLLC ("PPL") for power sites on the Madison, Missouri, and Clark Fork Rivers, and currently occupied by PPL's successor in interest, NorthWestern Corporation, dba NorthWestern Energy ("NorthWestern"), and if so, the compensation Montana is entitled to for the use of those lands

2.      When this case was originally filed, the Plaintiffs included PPL, Avista Corporation, and PacifiCorp.  Both PacifiCorp and Avista subsequently entered into settlement agreements with Montana and were dismissed as parties.

3.      On June 13, 2008, the Montana First Judicial District Court, Lewis and Clark County, issued its Findings of Fact and Conclusions of Law, together with its Memorandum of Decision, identifying the lands owned by Montana and the compensation owed by PPL for use of those lands.  Previously, the Montana First Judicial District Court had granted Montana's Motion for Partial Summary Judgment, based on its determination that the Madison, Missouri, and Clark Fork Rivers were navigable for purposes of title where the power sites are located.

4.     Judgment was entered against PPL and in favor of Montana on August 20, 2008.   PPL appealed to the Montana Supreme Court and argued, among other things, that the First Judicial District Court erred in granting summary judgment on the issue of navigability because there were disputed issues of material fact.

5.     The Montana Supreme Court affirmed the First Judicial District Court's judgment.   *PPL Montana, LLC v. State of Montana*, 2010 MT 64, 355 Mont. 402, 229 P.3d 421.

6.     PPL subsequently petitioned the United States Supreme Court for a writ of certiorari, which was granted on the sole issue of whether the Montana Supreme Court erred in its analysis and conclusion with respect to the navigability for title doctrine.   The U.S. Supreme Court reversed and remanded the case for further proceedings under the segment-by-segment analysis set forth in the Court's opinion.   *PPL Montana, LLC v. Montana*, 565 U.S. 576, 132 S. Ct. 1215, 182 L.Ed.2d 77 (2012).

7.     On September 26, 2013, NorthWestern executed a Purchase and Sale Agreement ("Agreement") with PPL for purchase of PPL's hydroelectric generating facilities in Montana.   The Agreement included the transfer of ownership from PPL to NorthWestern of all the facilities that are at issue in this case.

8.     The Montana Public Service Commission approved NorthWestern's acquisition by order dated September 26, 2014.  PSC Dkt. No. D2013.12.85, Order No. 7323k.

9.     On or about June 1, 2015, PPL Montana, LLC changed its legal name to Talen Montana, LLC.  The change in name did not involve the transfer, assignment or sale of any rights or interests relating to PPL Montana's assets, and has no impact on the parties or issues in this lawsuit.

10.     Pursuant to a stipulated order from the Montana First Judicial District Court, Talen Montana, LLC has been substituted for PPL Montana, LLC, and Montana has been realigned as the Plaintiff pursuant and subject to the provisions of Montana Rule of Civil Procedure 15, with Talen realigned as Defendant.  Doc. 13-3.

11.     On March 31, 2016, Montana filed its Complaint on Remand naming Talen and NorthWestern as Defendants.  Doc. 13-4.

12.     On April 20, 2016, NorthWestern filed its Notice of Removal, invoking this Court's federal question jurisdiction.  Doc. 1.  Talen consented to NorthWestern's removal.

13.     On May 19, 2016, Montana filed its Motion for Remand.  Doc. 12.

14.     On January 17, 2017, the United States Magistrate Judge entered Findings and Recommendations granting Montana's motion to remand.  Doc. 144.

15.     NorthWestern and Talen filed objections to the Findings and Recommendations remanding this matter to State Court.

16.     On October 10, 2017, this Court entered its order reviewing the Magistrate's Findings and Recommendations and found federal question jurisdiction over this matter under 28 U.S.C. § 1331 and denied Montana's motion to remand.  Doc. 171.

17.     On October 16, 2017, NorthWestern filed its renewed Motion to Dismiss Montana's claims to the extent they relate to the "Great Falls reach."  Doc. 173.  Talen likewise moved for dismissal of Montana's claims to the same reach. Doc. 174.

18.     On August 1, 2018, this Court entered its Order granting in part Defendants' renewed motions to dismiss a portion on Montana's claims.  Under the order, Counts I, II and III of Montana's Complaint on Remand were dismissed to the extent they pertain to approximately 8.2 miles of the riverbed of the Missouri River between Black Eagle Falls and the Great Falls.  Doc. 191.

19.     On August 22, 2018, NorthWestern and Talen filed their Answers to Montana's Complaint on Remand.  Docs. 195, 196.

20.     On August 22, 2018, NorthWestern filed its Motion for Joinder under Fed. R. Civ. P. 19, seeking joinder of the United States of America.  Doc. 192.

21.     On February 2, 2019, the Court granted Defendant NorthWestern Corporation's Motion for Joinder of Necessary Party under Fed. R. Civ. P. 19 (Docs. 192, 216).

22.     Under the February 2, 2019 Order, Montana is required to amend its pleadings and name the United States as a party defendant under the Federal Quiet Title Act ("FQTA").  28 U.S.C. § 2409(a).  (Doc. 216).

23.     By this Court's April 5, 2019 Order, Montana is required to amend its pleadings to name the United States as a party defendant under the FQTA by October 31, 2019.  (Doc. 219).

## JURISDICTION AND VENUE

24.     Montana seeks a declaratory judgment, that Talen and its successor in interest, NorthWestern, must compensate Montana for their use of lands owned by Montana, as required by law. Montana further seeks damages for Talen's and NorthWestern's unlawful past and ongoing use of those lands without compensation to Montana, based on Montana law as alleged below.

25.     Montana's request for declaratory relief and monetary compensation is proper because: (1) the parties have an existing and genuine interest in the outcome of this action; (2) there is an actual controversy between the parties; (3) the judicial determination of the controversy will be a final judgment on the rights,

status, or legal relationship of the parties; and (4) Montana law requires the State to obtain full market value for the use of state lands.

26.    Pursuant to this Court's Order (Doc. 216), Montana brings this amended complaint seeking declaratory relief and an adjudication by this Court that segments of the Madison, Missouri, and Clark Fork Rivers were navigable at statehood resulting in Montana owning submerged lands beneath these navigable waters, as described herein, free of any fee ownership interest therein asserted or claimed by the United States acting through the United States Department of Agriculture, Forest Service, and United States Department of Interior, Bureau of Land Management and Bureau of Reclamation.

27.    Montana brings its amended complaint under:

a.  the Federal Quiet Title Act, 28 U.S.C. § 2409a, which authorizes a federal district court to adjudicate disputes over the title to real property in which the United States claims an interest and 28 U.S.C. § 1346(f), wherein federal district courts have exclusive jurisdiction over civil actions arising under § 2409a (Count Four set forth herein);

b. the Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes a federal court in a case or controversy to declare the rights and legal relations of an interested party seeking such declaration (Count Five set forth herein); and,

c. Title 28, U.S.C. § 1367(a) which authorizes a federal district court to consider Montana's pendent state law claims against Defendants Talen Montana, LLC and NorthWestern Corporation (Counts One, Two, and Three, set forth herein).

28.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2409a (Quiet Title Act "QTA"); 28 U.S.C. § 2201 (declaratory relief); 28 U.S.C. § 1346(f) (conferring upon federal district courts exclusive original jurisdiction over actions to quiet title to real property in which the United States claims an interest); and, 28 U.S.C. § 1367(a)(pendent jurisdiction).

29.    The QTA provides a valid waiver of the United States of America's sovereign immunity to resolve disputes over title to real property in which the United States claims an interest as described herein.

30.    Although not directly applicable to joinder under Fed. R. Civ. P. 19, Montana has satisfied the QTA's 180-day notice of intent to sue requirement.  *See* 28 U.S.C. § 2409a(m).  By letter dated April 19, 2019, Montana gave notice to the heads of the Federal agencies with jurisdiction over any federal lands along the river segments at issue of its intent to file suit with regard to the ownership of the submerged lands at issue in this case.  A copy of this Notice is included as Exhibit 1.

31.     This action is timely under 28 U.S.C. § 2409a(g).

32.     Under 28 U.S.C. § 1346(f) federal district courts have exclusive original jurisdiction over civil actions arising under the QTA.

33.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the lands at issue in this action are located within the District of Montana.

34.     This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

35.     A case or controversy has arisen over the application of the Equal Footing Doctrine and the navigability for title test to Montana's ownership of the submerged lands described herein and its jurisdiction to regulate and control this land.

36.     Venue lies in the District of Montana, Helena Division, pursuant to 28 U.S.C. § 1391 and § 1402(d), given the fact that the riverbeds at issue are located in this District (Gallatin, Madison, Lewis and Clark, Cascade, and Sanders Counties, Montana).

## PARTIES

37.     The Plaintiff State of Montana is one of the fifty sovereign states of United States of America, with a sovereign interest in the management and conservation of the beds of navigable rivers and other navigable waters and submerged lands to which it has title. In bringing this amended complaint,

Montana seeks to confirm and retain its right to compensation for the use and occupancy of its lands.

38.     Defendant United States of America (Counts Four and Five) is a sovereign nation and claims a fee ownership interest in certain riparian lands underlying or adjacent to the segments of the Madison, Missouri, and Clark Fork Rivers at issue herein, as more fully set forth below.  Defendants United States Forest Service, United States Bureau of Land Management, and United States Bureau of Reclamation are administrative agencies of the United States government.

39.     Defendants NorthWestern Corporation and Talen Montana, LLC (Counts One, Two, and Three), now own and operate, or formerly owned and operated, hydropower facilities and developments situated within a portion of the submerged lands within the segments underlying the Madison, Missouri, and Clark Fork Rivers, as described herein.   Pursuant to Montana law, Defendants NorthWestern Corporation and Talen Montana, LLC, are obligated to compensate Montana for the use and occupancy of Montana's state-owned lands underlying each river segment as described.

## CLAIMS FOR RELIEF

40.     Montana owns state lands acquired through a variety of means, including: (1) beds and banks of navigable waters granted to Montana upon its

admission to the Union on an equal footing with the established states, (2) lands granted to Montana under the Enabling Act, and (3) other state lands (hereinafter collectively "state lands").

41.    Montana entered the Union of the United States of America on November 8, 1889, as the 41st state. Upon admission to the Union, Montana acquired title to the beds and banks of navigable waters in Montana at issue herein on an equal footing with the established states.  In addition, the Submerged Lands Act vested in the states title to ownership of lands beneath navigable waters within the boundaries of the respective states.  43 U.S.C. § 1311(a).

42.    Under section 10 of the Montana Enabling Act of February 22, 1889 (hereinafter the "Enabling Act"), Congress granted Montana lands to be used for the support of common schools.

43.    Section 11 of the Enabling Act provides that all lands granted may be leased for the development of hydroelectric power, and reserves the proceeds from these lands for public purposes:

> The lands hereby granted shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for the purposes for which they have been granted.

44.    The Montana Constitution accepted these lands and provided that they would be held in trust consistent with the terms of the Enabling Act.

45.     Under Article X, section 2(4) of the Montana Constitution, "[a]ll grants of land or money made from the United States for general educational purposes or without special purpose" are considered state lands.

46.     Under Article X, section 11(1) of the Montana Constitution, Montana holds all state lands in trust:

> All lands of the state that have been or may be granted by congress, or acquired by gift or devise from any person or corporation, shall be public lands of the state. They shall be held in trust for the people, to be disposed of as hereafter provided for the respective purposes for which they have been or may be granted, donated, or devised.

47.     Montana state lands include "(i) lands granted to the state by the United States for any purpose, either directly or through exchange for other lands; (ii) lands deeded or devised to the state from any person; and (iii) lands that are the property of the state through the operation of law." Mont. Code Ann. § 77-1-101(8)(a).  Montana may not dispose of any interest in state lands unless "the full market value of the estate or interest disposed of, to be ascertained in such manner as provided by law, has been paid or safely secured to the state."  Mont. Const. art. X, § 11(2).

48.     Although Montana law prohibits the sale of "state lands constituting power sites or parts of power sites capable of developing hydroelectric energy in commercial quantities," Mont. Code Ann. § 77-4-201, both Montana law and the Enabling Act authorize the leasing of state lands for

12

the development of power sites for periods of up to 50 years.  Mont. Code Ann. § 77-4-208.

49.     The term "power site," as provided under Montana law, includes "not only the state-owned land on which the dam is constructed, but also each separate tract of such land which will become part of the reservoir and which in and of itself makes an essential contribution to the value of the power site as a whole of not less than 5 percent of the entire value of such power site." Mont. Code Ann. § 77-4-202.

50.     Montana law requires that rental payments on leases for power sites "must be paid annually or semiannually and the rental may not be less than the fair market value of the estate or interest disposed of through the granting of the lease or license," such value to be "carefully ascertained from all available sources."  Mont. Code Ann. § 77-4-208.

51.     Montana law also provides for the joint leasing of power sites with the federal government under which the state's share "must be in proportion to the total contribution that the lands of the state make to the value of the entire power site." Mont. Code Ann. § 77-4-210.

52.     Montana requires the owners of power sites, including federally licensed power sites, to pay the fair market value for a lease of or other interest in those state lands that the power sites occupy.  Mont. Code Ann. §§ 77-4-208,

210.

53.     Until it transferred ownership to NorthWestern, Talen owned the Hebgen Dam, a storage facility built in 1915 on the Madison River, a navigable river.  NorthWestern now owns the Hebgen Dam.  Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

54.     Until it transferred ownership to NorthWestern, Talen owned the Madison Dam, a 9-megawatt facility built in 1906 on the Madison River, a navigable river. NorthWestern now owns the Madison Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

55.     Until it transferred ownership to NorthWestern, Talen owned the Hauser Dam, a 17-megawatt facility built in 1907 on the Missouri River, a navigable river. NorthWestern now owns the Hauser Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

56.     Until it transferred ownership to NorthWestern, Talen owned the Holter Dam, a 50-megawatt facility built in 1918 on the Missouri River, a navigable river. NorthWestern now owns the Holter Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

57.     Until it transferred ownership to NorthWestern, Talen owned the Black Eagle Dam, an 18-megawatt facility built in 1891 on the Missouri River, a navigable river. NorthWestern now owns the Black Eagle Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

58.     Until it transferred ownership to NorthWestern, Talen owned the Morony Dam, a 48-megawatt facility built in 1930 on the Missouri River, a navigable river.  NorthWestern now owns the Morony Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

15

59.    Until it transferred ownership to NorthWestern, Talen owned the Thompson Falls Dam, a 90-megawatt facility built in 1915 on the Clark Fork River, a navigable river. NorthWestern now owns the Thompson Falls Dam. Montana has never been reimbursed for the value of the interest in the state lands upon which the power site and its appurtenances are located, and presently does not receive lease payments or other forms of compensation for the use of these state lands.

60.    Montana owns the bed and banks of those segments of each of the foregoing rivers that are navigable for title purposes, on which all or some of the foregoing power sites are located.

61.    Montana owns other state lands, granted to it under the Enabling Act or otherwise acquired, that the foregoing power sites occupy and submerge.

62.    Montana has been and will in the future be injured by the failure of Talen and NorthWestern to pay the fair market value for use of these state lands as power sites, including all or some of those sites listed above, and are entitled to an award of damages including but not limited to compensatory and remedial damages, and an award of interest to avoid injustice.

## NATURE AND CIRCUMSTANCES OF MONTANA'S TITLE
## TO ITS SUBMERGED LANDS/INTERESTS OF UNITED STATES

63.    In 1889, when the State of Montana attained Statehood, it succeeded to ownership of the lands beneath navigable waters bodies within its border to the

high-water mark under the Equal Footing Doctrine of the United States Constitution. *Utah v. United States*, 482 U.S. 193, 107 S. Ct. 2318, 961 L.Ed. 2d 162 (1987); *Alaska v. Ahtna, Inc.,* 891 F.2d 1401 (9th Cir. 1989).  In addition to the Equal Footing Doctrine, Congress has recognized title vested to Montana to the ownership of "lands beneath navigable waters" within its boundaries.  43 U.S.C. § 1311(a).  After attaining statehood, Montana clarified its ownership of the beds of navigable for title water bodies vested between the low water marks of such water bodies.  Mont. Code Ann. § 70-16-201.    Thus, Montana owns title to lands beneath navigable water bodies within its boundary to the edge of the low water marks by operation of the Equal Footing Doctrine, and after statehood, Montana law on ownership of property bounded by navigable water bodies.  *Oregon ex rel. State Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). Montana's ownership at statehood includes the submerged lands underlying the Madison, Missouri and Clark Fork River segments as described herein.

64.    Talen and now NorthWestern operate the Missouri-Madison and Thompson Falls Projects pursuant to licenses issued by the Federal Energy Regulatory Commission (FERC).  The Missouri-Madison Project is FERC Project-2188.  The Thompson Falls Project is FERC Project-1869.  The United States of America, as a riparian landowner, owns title to lands beneath *nonnavigable* water

17

bodies up to the middle thread of the stream, or, across the entire riverbed to the extent of its riparian land on either or both sides of any nonnavigable water bodies. *PPL Montana, LLC v. State of Montana*, Br. of United States as Amicus Curiae, 2011 WL 3947562 *1 (Sept. 7, 2011). With respect to the hydropower projects at issue here, in 2011 the United States disclosed it charges NorthWestern, and previously Talen, rentals for the projects constructed on or which flood federal lands, a portion being for unspecified  "riverbed" rather than flooded upland, related to the three rivers at issue in this matter.  *Id.* *34 n.3; Doc. 216 at 7. To the extent the river segments at issue in this action are *navigable* for title water bodies, any riparian land ownership of the United States within or along each segment is subject to Montana's ownership as a result of application of the Equal Footing Doctrine and after statehood, Montana law on ownership of property bounded by navigable for title water bodies.

65.     Further, this Court has also determined the United States has an interest in the property at issue on the question of navigability for title as the consequences of that question will determine which of the two sovereigns may charge rent for the enjoyment and occupancy of the submerged lands at issue in this case.  Doc. 216 at 6.  By charging rentals to NorthWestern, and previously Talen, for unspecified "riverbed" use to any land owned by Montana underlying segments of the Madison, Missouri, and Clark Fork Rivers as described herein, the

United States' assertion of title to these submerged lands conflicts with Montana's ownership, and conflicts with Montana's right to be compensated for such use. *PPL Montana,* 565 U.S. at 587; Doc. 216 at 7-8.

66.     By reason of the foregoing, the United States claims an interest in the real property the subject of this action.

## DESCRIPTION OF THE RIVER SEGMENTS AT ISSUE

Madison River

67.     The Madison River flows from the Northern Rocky Mountains in Yellowstone National Park, Wyoming, across the Wyoming-Montana State border into Gallatin County, Montana, and flows a distance of 140 miles to its confluence with the Gallatin and  Jefferson Rivers, forming the Headwaters of the Missouri River within Sec. 17, T. 2 N., R. 2 E., Principal Meridian, Montana (P.M.M.), northeast of Three Forks, Montana, in Gallatin County, Montana.

68.     The Hebgen Dam was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Madison River starting within Sec. 22, T. 11 S., R. 3 E., P.M.M., Gallatin County and ending

within Sec. 4, T. 13 S., R. 5 E., P.M.M., Gallatin County, Montana. *See*, Exhibit 2.[1]

69.    The Madison Hydropower Development was previously owned by Talen Montana, LLC and is now owned by NorthWestern Corporation and is located on the Madison River starting within Sec. 17, T. 4 S., R. 1 E., P.M.M., Madison County Montana, and ending within Sec. 10, 11, 14, T. 5 S., R. 1 W., P.M.M., Madison County, Montana. *See*, Exhibit 3.

Missouri River

70.    The Missouri River flows from the confluence of the Gallatin, Jefferson, and Madison Rivers northeast of Three Forks, Montana in Gallatin County, Montana, north, northwesterly, and then northeasterly, in part through Lewis and Clark County, and Cascade County, Montana, wherein the reaches at issue in this matter are situated.

71.    The Hauser Hydropower Development was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Missouri River starting within Sec. 29, T. 12 N., R. 2 W., P.M.M.,

---

[1] Exhibits 2-8 identify segments of the Madison, Missouri, and Clark Fork Rivers, as applicable, based upon Federal Energy Regulatory Commission (FERC) License Exhibits K and G; Available Government Land Office (GLO) Maps and Field Notes; USGS Water Supply Papers and Surveys; Missouri River Commission Maps and Field Notes; and, other authoritative historic maps of each project prior to flooding, including maps and field notes of predecessors of NorthWestern and Talen, and are the best available evidence of the location of the original river beds as previously determined by the state trial court in this case. In this action Montana claims ownership of the riverbeds as described herein.

Lewis and Clark County, Montana, and ending within Sec. 4, T. 10 N., R. 1 W., P.M.M., Lewis and Clark County, Montana.  *See,* Exhibit 4.

72.    The Holter Hydropower Development was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Missouri River starting within Sec. 5, T. 14 N., R. 3 W., P.M.M., Lewis and Clark County, Montana, and ending within Sec. 29, T. 12 N., R. 2 W., P.M.M., Lewis and Clark County, Montana.  *See*, Exhibit 5.

73.    The Black Eagle Dam Hydropower Development was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Missouri River starting within Sec. 5, T. 20 N., R. 4 E., P.M.M., Cascade County, Montana and ending within Sec. 11, T. 20 N., R. 3 E., P.M.M., Cascade County, Montana.   *See,* Exhibit 6.

74.    The Morony Dam Hydropower Development was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Missouri River starting within Sec. 11, T. 21 N., R. 5 E., P.M.M., Cascade County, Montana, and ending within Sec. 21, T. 21N., R. 5E., P.M.M., Cascade County, Montana. *See,* Exhibit 7.

Clark Fork River

75.    The Clark Fork River flows from its headwaters in Deer Lodge County, Montana, northerly, and then generally westerly in part through Sanders

County, Montana, wherein the reach at issue in this matter is situated.

76.     The Thompson Falls Dam Hydropower Development was previously owned by Talen Montana, LLC, and is now owned by NorthWestern Corporation and is located on the Clark Fork River starting within Sec. 7, T. 21 N., R. 29 W., P.M.M., Sanders County, Montana, and ending within Sec. 25, T. 21 N., R. 28 W., P.M.M., Sanders County, Montana.  *See,* Exhibit 8.

77.     In limiting this action to only the designated portions of the Madison, Missouri, and Clark Fork Rivers, Montana is not presently taking a position on whether other portions or segments of each river is, or is not, navigable, and also not taking a position regarding what, if any, legal rights Montana may possess or subsequently assert in and to the other portions or segments of each river within Montana's boundary.

## MONTANA'S OWNERSHIP OF SUBMERGED LANDS WITHIN THE REACHES AT ISSUE

78.     The segments of the Madison River on which the Hebgen Dam and Madison Hydropower Developments are located as described in ¶¶ 68-69 were navigable for title at the time of statehood.  As navigable for title water bodies, Montana owns the beds of the Madison River between the low water marks within these segments of the Madison River along the course of the Madison River from the starting and ending points described, under the Equal Footing Doctrine and after statehood pursuant to Montana law.  *See,* Exhibits 2 and 3.

Montana's ownership of the beds of the Madison River, as described above, are situated within:

Hebgen Dam:

> T. 11 S., R. 3E., P.M.M.,
>   Sections 22, 23, 25, 26, 36
>
> T. 11 S., R. 4 E., P.M.M.,
>   Section 31
>
> T. 12 S., R. 4 E., P.M.M.,
>   Sections 5, 6, 8, 16, 17, 21, 28, 33, 34, 35, 36
>
> T. 12 S., R. 5 E., P.M.M.,
>   Section 31
>
> T. 13 S., R. 5 E., P.M.M.,
>   Sections 4, 5, 6

Amounting to not less than 713 acres of historic riverbed.

Madison Development:

> T. 4 S., R. 1 E., P.M.M.,
>   Sections 17, 19, 20, 30, 31
>
> T. 4 S., R. 1 W., P.M.M.,
>   Sections 34, 35, 36
>
> T. 5 S., R. 1 E., P.M.M.,
>   Section 6
>
> T. 5 S., R. 1 W., P.M.M.,
>   Sections 1, 2, 3, 10, 11, 12, 14

Amounting to not less than 284 acres of historic riverbed.

79.     The segments of the Missouri River on which the Hauser and Holter Developments are located as described in ¶¶ 71-72 were navigable for title at the time of statehood.  As navigable for title water bodies, Montana owns the beds of the Missouri River between the low water marks within these segments of the Missouri River along the course of the Missouri River from the starting points and ending points described, under the Equal Footing Doctrine and after statehood pursuant to Montana law.  *See,* Exhibits 4 and 5.

Montana's ownership of the beds of the Missouri River, as described above, are situated within:

Hauser Development:

> T. 12 N., R. 2 W., P.M.M.,
>   Sections 29, 32
>
> T. 11 N., R. 2 W., P.M.M.,
>   Sections 5, 8, 9, 10, 11, 12, 13, 14, 23, 24, 26, 35, 36
>
> T. 11 N., R. 1 W., P.M.M.,
>   Sections 31, 32, 33
>
> T. 10 N., R. 2 W., P.M.M.,
>   Section 1
>
> T. 10 N., R. 1 W., P.M.M.,
>   Sections 4, 5, 6
>
> Amounting to not less than 1,057 acres of historic riverbed.

Holter Development:

T. 14 N., R. 3 W., P.M.M.,
    Sections 5, 8, 9, 14, 15, 16, 22, 23, 26, 27, 34, 35

T. 13 N., R. 3 W., P.M.M.,
    Sections 1, 2, 11, 12, 13, 14, 36

T. 13 N., R. 2 W., P.M.M.,
    Sections 18, 19, 30, 31

T. 12 N., R. 3 W., P.M.M.,
    Sections 1, 2, 11, 12, 13

T. 12 N., R. 2 W., P.M.M.,
    Sections 18, 19, 29, 30

Amounting to not less than 1,464 acres of historic riverbed.

80.    The segments of the Missouri River on which the Black Eagle and Morony Dam Developments are located as described in ¶¶ 73-74 were navigable for title at the time of statehood. As navigable for title water bodies, Montana owns the beds of the Missouri River between the low water marks within these segments of the Missouri River along the course of the Missouri River from the starting points and ending points described, under the Equal Footing Doctrine and after statehood pursuant to Montana law. *See,* Exhibits 6 and 7.

Montana's ownership of the beds of the Missouri River, as described above, are situated within:

Black Eagle Development:

    T. 20 N., R. 4 E., P.M.M.,
     Sections 5, 6

    T. 20 N. R. 3 E., P.M.M.,
     Sections 1, 2, 11

    Amounting to but not less than 460 acres of historic riverbed.

Morony Development:

    T. 21 N., R. 5 E., P.M.M.,
     Sections 11, 14, 15, 16, 21, 22

    Amounting to not less than 263 acres of historic riverbed.

81.    The segments of the Clark Fork River on which the Thompson Falls Dam Development is located as described in ¶ 76 were navigable for title at the time of statehood.  As navigable for title water bodies, Montana owns the beds of the Clark Fork River between the low water marks within these segments of the Clark Fork River along the course of the Clark Fork River from the starting point and ending point described, under the Equal Footing Doctrine and after statehood pursuant to Montana law.  *See*, Exhibit 8.

Montana's ownership of the beds of the Clark Fork River, as described above, are situated within:

Thompson Falls Development:

    T. 21 N., R. 29 W., P.M.M.,
     Sections 7, 8, 9, 13, 15, 16, 22, 23, 24

> T. 21 N., R. 28 W., P.M.M.,
>   Sections 15, 16, 17, 18, 21, 22, 23, 24, 25, 26

Amounting to not less than 1,089 acres of historic riverbed.

## THE UNITED STATES OF AMERICA'S FEE OWNERSHIP OF LANDS WITHIN THE REACHES AT ISSUE

82.    The riverbeds at the time of statehood were independently mapped and georeferenced from historic source maps.  To determine the United States of America's fee ownership of lands along the reaches at issue, these were then overlaid with Federal land ownership layers, mapped to the location of the reservoir boundaries for each project, and georeferenced to 2019 public land survey system spatial coordinate systems.

Madison River

83.    The United States of America, Department of Agriculture, United States Forest Service, owns land within the Hebgen Dam Project within the following townships, ranges, and sections:

> T. 11 S., R. 3 E., P.M.M.
>   Sections 22, 23, 25, 26, 36
>
> T. 11 S., R. 4 E., P.M.M.
>   Section 31
>
> T. 12 S., R. 4 E., P.M.M.
>   Sections 5, 6, 8, 17, 33, 34, 35, 36
>
> T. 12 S., R. 5 E., P.M.M.
>   Sections 4, 5, 6

There is a present existing dispute as to the navigability of the segment of the Madison River as described in ¶ 68, and if this Court determines the Madison River, or segments of the Madison River, are navigable for title that coincide with land bordering upon the Madison River ("riparian land") owned by the United States of America, the title to the riverbed between the low water marks for the lands described in this paragraph along the course of the historic Madison River, will be vested in the State of Montana.

84.      The United States of America, Department of Interior, Bureau of Land Management owns land within the Madison Hydropower Project within the following townships, ranges, and sections:

> T. 4 S., R. 1 E., P.M.M.
>   Sections 17, 19, 20, 30
>
> T. 4 S., R. 1 W., P.M.M.
>    Section 36
>
> T. 5 S., R. 1 W., P.M.M.
>    Sections 10, 12

There is a present existing dispute as to the navigability of the segment of the Madison River as described in ¶ 69, and if this Court determines the Madison River, or segments of the Madison River, are navigable for title that coincide with land bordering upon the Madison River ("riparian land") owned by the United States of America, the title to the riverbed between the low water marks for the

lands described in this paragraph along the course of the historic Madison River, will be vested in the State of Montana.

<u>Missouri River:  Hauser Development</u>

85.   The United States of America owns lands within the Hauser Development as follows:

a.  United States of America, Department of Interior, Bureau of Reclamation:

<u>T. 11 N., R. 1 W., P.M.M.</u>
 Sections 32, 33

<u>T. 10 N., R. 1 W., P.M.M.</u>
  Sections 4, 5, 6

b.  United States of America, Department of Agriculture, Forest Service:

<u>T. 12 N., 2 W., P.M.M.</u>
 Sections 29, 32

<u>T. 11 N., R. 1 W., P.M.M.</u>
 Section 33

c.  United States of America, Department of Interior, Bureau of Land Management:

<u>T. 12 N., R. 2 W., P.M.M.</u>
 Sections 29, 32

<u>T. 11 N., R. 2 W., P.M.M.</u>
 Sections 5, 8, 11, 12, 13, 14, 23, 24, 26, 36

T. 11 N., R. 1 W., P.M.M.
 Sections 31, 32

T. 10 N., R. 2 W., P.M.M.
 Section 1

T. 10 N., R. 1 W., P.M.M.
 Sections 4, 5, 6

There is a present existing dispute as to the navigability of the segment of the Missouri River, as described in ¶ 71, and if this Court determines that the Missouri River, or segments of the Missouri River, are navigable for title that coincide with land bordering upon the Missouri River ("riparian land") owned by the United States of America, the title to the riverbed between the low water marks for the lands described in this paragraph along the course of the historic Missouri River will be vested in the State of Montana.

Missouri River:  Holter Development

86.    The United States of America owns lands within the Holter Development as follows:

a.  United States of America, Department of Interior, Bureau of Land Management:

T. 14 N., R. 3 W., P.M.M.
 Sections 5, 14, 15, 16, 22, 23, 26, 27, 34, 35

T. 13 N., R. 3 W., P.M.M.
 Sections 2, 11, 13, 14

30

T. 12 N., R. 3 W., P.M.M.
Sections 2, 13

T. 12 N., R. 2 W., P.M.M.
Sections 19, 29, 30

b.  United States of America, Department of Agriculture, United

States Forest Service:

T. 13 N., R. 2 W., P.M.M.
Sections 18, 19, 30, 31

T. 13 N., R. 3 W., P.M.M.
Section 36

T. 12 N., R. 3 W., P.M.M.
Sections 1, 2, 12, 13

T. 12 N., R. 2 W., P.M.M.
Sections 18, 19, 29, 30

There is a present existing dispute as to the navigability of the segment of the Missouri River as described in ¶ 72, and if this Court determines that the Missouri River, or segments of the Missouri River, are navigable for title that coincide with segments of the river with land bordering upon the Missouri River ("riparian land") owned by the United States of America, the title to the riverbed between the low water marks for lands described in this paragraph along the course of the historic Missouri River, will be vested in the State of Montana.

Clark Fork River

87.     The United States of America, Department of Agriculture, United States Forest Service, owns land within the Thompson Falls Development within the following township, range, and sections:

> T. 21 N., R. 28 W., P.M.M.
>   Sections 15, 17, 18, 21, 22, 23, 24, 25, 26

There is a present existing dispute as to the navigability of the segment of the Clark Fork River as described in ¶ 76, and if this Court determines that the Clark Fork River, or segments of the Clark Fork River, are navigable for title that coincide with segments of the river with land bordering upon the Clark Fork River ("riparian land") owned by the United States of America, the title to the riverbed between the low water marks for the lands described in this paragraph along the course of the historic Clark Fork River will be vested in the State of Montana.

## NAVIGABILITY FOR TITLE: ACTUAL USE AND SUSCEPTIBILITY

88.     The segment of the Madison River on which the Hebgen Development is located, as described in ¶ 68, was used or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel at the time of statehood as the State may prove at trial. Because this segment is navigable for title purposes, the United States cannot claim a fee ownership interest to the

riverbeds in this segment between the low water mark adverse to the ownership of Montana.

89.    The segment of the Madison River on which the Madison Hydropower Development is located, as described in ¶ 69, was used or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel at the time of statehood as the State may prove at trial. Because this segment is navigable for title purposes, the United States cannot claim a fee ownership interest to the riverbeds in this segment between the low water mark adverse to the ownership of Montana.

90.    The segment of the Missouri River on which the Hauser Development is located, as described in ¶ 71, was used or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel at the time of statehood as the State may prove at trial. Because this segment is navigable for title purposes, the United States cannot claim a fee ownership interest to the riverbeds in this segment between the low water mark adverse to the ownership of Montana.

91.    The segment of the Missouri River on which the Holter Development is located, as described in ¶ 72, was used or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade and travel

may be conducted in the customary modes of trade and travel at the time of statehood as the State may prove at trial. Because this segment is navigable for title purposes, the United States cannot claim a fee ownership interest to the riverbeds in this segment between the low water mark adverse to the ownership of Montana.

92.     The segments of the Missouri River on which the Black Eagle Dam and Morony Dam Developments are located, as described in ¶¶ 73-74 were used or susceptible of being used in their natural and ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel at the time of statehood as the State may prove at trial. Because these segments are navigable for title purposes, the United States cannot claim a fee ownership interest to the riverbeds in these segments between the low water mark adverse to the ownership of Montana.  Further, the United States of America does not own any riparian land within the segments of the Missouri River on which the Black Eagle Dam or Morony Dam Developments are located. Whether or not these segments are navigable, the United States of America cannot claim an interest to the riverbeds beneath these segments adverse to the ownership of Montana.

93.     The segment of the Clark Fork River on which the Thompson Falls Development is located, as described in ¶ 76, was used or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade

and travel may be conducted in the customary modes of trade and travel at time of statehood as the state may prove at trial. Because this segment is navigable for title purposes, the United States cannot claim a fee ownership interest to the riverbed between the low water mark adverse to the ownership of Montana.

### Count One (Declaratory Relief
### Defendants NorthWestern and Talen)

94.    Montana realleges the allegations set forth in paragraphs 1-93 above, including all subparagraphs.

95.    Montana is entitled to a declaration of this Court, pursuant to Montana's ownership rights under the Equal Footing Doctrine, the Enabling Act, the Montana Constitution, and Montana statutes, including the Hydroelectric Resources Act, Mont. Code Ann. § 77-4-201, *et seq.*, that all or some of the power sites at issue in this case occupy or submerge lands owned by Montana, and that Talen and NorthWestern must compensate Montana for the use of such lands, according to proof at trial.

### Count Two (Uncompensated Use of State Lands
### Defendants NorthWestern and Talen)

96.    Montana realleges the allegations set forth in paragraphs 1-95 above, including all subparagraphs.

97.    Talen and NorthWestern have entered upon and used state lands as power sites. Pursuant to Montana's ownership rights under the Equal Footing

Doctrine, the Enabling Act, the Montana Constitution, and Montana statutes, including the Hydroelectric Resources Act, Mont. Code Ann. § 77-4-201, *et seq.*, Talen and NorthWestern are obligated to pay to Montana full market value for the use of these lands in the form of annual or semi-annual lease payments.

98.     The failure of Talen and NorthWestern to make such payments to Montana has injured Montana.

99.     This injury entitles Montana to an award of damages in the amount of these unpaid leases, including an award of interest on such damages to avoid injustice.

<u>**Count Three (Unjust Enrichment**</u>
<u>**Defendants NorthWestern and Talen)**</u>

100.    Montana realleges the allegations set forth in paragraphs 1-99 above, including all subparagraphs.

101.    Talen and NorthWestern have received, through occupation and use of state lands, substantial financial benefits by using these state lands as power    sites.

102.    Talen and NorthWestern wrongfully have failed to reimburse Montana for use of its lands as power sites, in violation of its ownership rights under the Equal Footing Doctrine, the Enabling Act, the Montana Constitution, and Montana statutes, including the Hydroelectric Resources Act, Mont. Code Ann. § 77-4-201, *et seq.*

103.   Through this unlawful use and occupation of state lands, Defendants Talen and NorthWestern unjustly have been enriched at the expense of Montana.

104.   As a result of this unjust enrichment, Montana has suffered injury that entitles Montana to restitution and other compensation in amounts as will be just to compensate Montana fully, including an award of interest on such damages to avoid injustice.

### Count Four (Quiet Title: 28 U.S.C. § 2409a Defendant United States of America)

105.   Montana realleges the allegations set forth in paragraphs 1-104 above, including all subparagraphs.

106.   Pursuant to 28 U.S.C. § 2409a, the United States is subject to suit to quiet title to real property in which both Montana and the United States claim an interest.

107.   The United States of America denies the navigability of the described segments of the Madison, Missouri, and Clark Fork Rivers, or parts thereof, under the segment-by-segment test set forth under *PPL Montana, LLC, v. Montana,* 565 U.S. 576*,* 132 S.Ct. 1215, 182 L.Ed.2d 77 (2012).  *See,* Br. of United States as *Amicus Curiae*, 2011 WL 394756 *2 at 20-32; ¶¶ 83-87, infra.

108.   The described segments of the Madison, Missouri, and Clark Fork Rivers were navigable for title purposes at the time of statehood, and there were no

withdrawals in effect for the submerged lands at issue in this action.  Therefore, title to such lands automatically transferred to the State of Montana pursuant to the Equal Footing Doctrine at statehood after which the lands became subject to the laws of the State of Montana.

109.   Montana is entitled to an Order of this Court quieting title to the submerged lands between the low water marks, underlying the Madison, Missouri, and Clark Fork Rivers along each segment as described herein under the Equal Footing Doctrine of the United States Constitution and after statehood the laws of the State of Montana, free and clear of any fee ownership interest of the United States of America in conflict with Montana's ownership, adverse to Montana's ownership, or which places a cloud on Montana's title under any rentals the United States may charge to owners or operators of the hydropower projects at issue in this matter.

## <u>Count Five (Declaratory Judgment: Defendant United States of America)</u>

110.   Montana realleges the allegations set forth in paragraphs 1-109 above, including all subparagraphs.

111.   The described segments of the Madison, Missouri, and Clark Fork Rivers were navigable for title purposes at the time of statehood and therefore title automatically transferred to the State of Montana pursuant to the Equal Footing Doctrine for the lands underlying the beds of each designated segment.   After

statehood these lands became subject to Montana law on the ownership of property bounded by navigable water bodies.

112.  The United States of America denies the navigability of the designated segments of the Madison, Missouri, and Clark Fork Rivers, or parts thereof, under the segment-by-segment test set forth under *PPL Montana, LLC, v. Montana,* 565 U.S. 576*,* 132 S.Ct. 1215, 182 L.Ed.2d 77 (2012); *See,* Br. of United States as *Amicus Curiae*, 2011 WL 394756 *2 at 20-32; ¶¶ 83-87, infra.

113.  An actual controversy exists between Montana and the United States rising out of application of the Equal Footing Doctrine, and the navigability for title test, to the ownership of the lands between the low water marks underlying the designated segments of the Madison, Missouri, and Clark Fork rivers as described herein.

114.  Pursuant to 28 U.S.C. § 2201, Montana is entitled to a declaration that the designated segments of the Madison, Missouri, and Clark Fork Rivers are navigable for title and under the Equal Footing Doctrine and Montana law, Montana owns the lands between the low water marks within the segments described herein and any fee ownership of the United States to any riparian lands along the designated segments is subject to Montana's ownership including the authority and right to charge rentals for the use and occupancy of Montana's lands within each designated reach or segment within each reach.

## PRAYER FOR RELIEF

WHEREFORE, The State of Montana respectfully requests the following relief:

A.    For a declaration that all or some of the power sites at issue in this case occupy or submerge lands owned by Montana, that the failure of Talen and NorthWestern to compensate  Montana for their use of these lands is unlawful, and that Talen and NorthWestern must compensate Montana for the past and present use of such lands;

B.    For damages from Defendants Talen and NorthWestern, in the form of compensation to Montana in an amount to be determined at trial, for Talen's and NorthWestern's use of state lands as power sites without payment to Montana;

C.    For restitution from Defendants Talen and NorthWestern, in the form of compensation to Montana in an amount to be determined at trial, for Talen's and NorthWestern's unjust enrichment to the detriment of Montana, by virtue of their past and ongoing failure to compensate Montana for their use of state lands;

D.    That this Court enter judgment declaring that the designated portions of the Madison, Missouri, and Clark Fork rivers are navigable for title purposes, and further, that as a result, title to the bed of said water bodies between the low water marks within the segments described herein is vested in the State of Montana

and that the United States has no fee ownership title thereto or interest therein which conflicts with Montana's ownership, since statehood;

E.    This Court enter a judgment quieting title to the riverbeds between the low water marks and segments above described in favor of the State of Montana and establishing that such riverbeds are free and clear of any right, title, or interest in fee ownership as claimed by the United States of America;

F.    For interest on damages and restitution awarded from Talen and NorthWestern, as required to avoid injustice;

G.    For attorney's fees and costs as may be authorized or warranted under applicable law; and,

H.    For such other relief to which Montana may be entitled under law, or which is just and equitable.

DATED this 31st day of October, 2019.

> Timothy C. Fox
> MONTANA ATTORNEY GENERAL
> Pat Risken
> ASSISTANT ATTORNEY GENERAL
>
> James P. Molloy
> GALLIK, BREMER & MOLLOY, P.C.
>
> John E. Bloomquist
> BLOOMQUIST LAW FIRM. P.C.
>
> /s/*John E. Bloomquist*
> John E. Bloomquist
> *Attorneys for Plaintiff State of Montana*

41