IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STATE OF MONTANA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>TALEN MONTANA, LLC f/k/a PPL Montana, LLC, and NORTHWESTERN CORPORATION, d/b/a NorthWestern Energy, a Delaware Corporation, and United States of America, United States Forest Service, United States Bureau of Reclamation, and United States Bureau of Land Management,<br><br>　　　　Defendants. | CV 16–35–H–DLC<br><br><br>ORDER |

Before the Court is Plaintiff State of Montana's ("Montana") motion for Rule 54(b) certification. (Doc. 420.) Montana requests that the Court enter final judgment on its August 25, 2023, Findings of Fact, Conclusions of Law, and Order (Doc. 417). For the reasons herein, the Court certifies the August 25 Order as a final decision on liability/navigability of the river segments (Phase 1) and stays the issue of damages (Phase 2) pending a final decision on Phase 1 from the Ninth Circuit.

## BACKGROUND

In March 2016, Montana, NorthWestern Corporation ("NorthWestern"), and Talen Montana LLC's ("Talen") predecessor in interest, PPL Montana, LLC, filed a stipulation with the Montana First Judicial Court which provided:

> The issues of liability/navigability and damages shall be bifurcated. All claims or defenses relating or pertaining to navigability at time of statehood (the "navigability claims") initially shall be so adjudicated to conclusion before the District Court. All remaining claims or defenses of the Parties, including damages claims or defenses (the "remaining claims"), as such claims may be amended following adjudication of the navigability claims, shall be held in abeyance pending resolution of the navigability claims by the District Court. All such remaining claims shall be adjudicated if and as necessary following final adjudication of the navigability claims by the District Court. The parties reserve the right to seek an interlocutory appeal pursuant to Mont. R. Civ. P. 54(b) following final adjudication of the navigability claims by the District Court.

(Doc. 121-16 at 2.)   In June 2020, this Court issued a scheduling order which similarly stated:

> Pursuant to the parties' 2016 stipulation, the issues of liability/navigability and damages are bifurcated in this case. That is, all claims or defenses relating to navigability at the time of statehood (the "navigability claims") will be adjudicated to conclusion first ("Phase 1"). All remaining claims or defenses, including damages claims or defenses, are held in abeyance pending resolution of the navigability claims ("Phase 2"). Phase 2 shall commence if and as necessary following final adjudication of Phase 1.

(Doc. 246 at 2.)

In January 2022, following significant pretrial practice, the Court held a ten-

day bench trial on Phase 1. Hundreds of exhibits were submitted into evidence and the Court heard testimony from 15 expert witnesses. On August 25, 2023, the Court issued its Findings of Fact, Conclusions of Law, and Order ("Phase 1 Order"). (Doc. 417.) In the Phase 1 Order, the Court determined that the Sun River to Black Eagle Falls Segment of the Missouri River, beginning at River Mile 2121.7 and ending at River Mile 2117.9, was navigable at the time of statehood, and therefore ordered that title be quieted to Montana for the riverbeds lying within that segment. (Doc. 417 at 74, 77.) As to the remaining disputed river segments, the Court found that the rivers were not navigable at the time of statehood, and therefore quieted title to the United States. (Doc. 417 at 77.) The Court ordered that Defendants Talen and NorthWestern must compensate Montana for the past, present, and future use of the riverbeds within the Sun River to Black Eagle Falls segment of the Missouri River, but left the amount to be determined in a subsequent trial. (*Id.* at 77.)

On October 11, 2023, Montana moved the Court for certification of the Phase 1 Order under Fed. R. Civ. P. 54(b). (Doc. 420.) Talen and NorthWestern oppose. (Doc. 424.)

## ANALYSIS

An order is generally "final and appealable under 28 U.S.C. § 1291 only if it 'ends litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Lovell v. Chandler*, 303 F.3d 1039, 1047 (9th Cir. 2002) (citing *Catlin v. United States*, 324 U.S. 229 (1945)). Under Rule 54(b), "a district court 'may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.'" *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (quoting *Catlin*, 324 U.S. at 233). Rule 54(b) certification is proper where an order has "a requisite degree of finality as to an individual claim in a multiclaim action." *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991). The Court maintains broad discretion in determining whether an issue is final and appealable. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005). In determining whether certification under Rule 54(b) is appropriate, a "district court must first determine that it is dealing with a 'final judgment;' it must be a 'judgment' in a sense that it is a cognizable claim for relief, and it must be 'final' in the sense that it is an ultimate disposition of [an] individual claim entered in course of [a] multiple claims action." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980).

I.   **Final judgment as to one or more, but fewer than all claims**

Montana argues that the Phase 1 Order was a final decision on a multiclaim issue and thus, the order is appealable under Rule 54(b).   (Doc. 420 at 7.) According to Montana, it's amended complaint presents two separate claims: "first, [Montana seeks] title to the riverbeds underlying river segments within the disputed reaches to which Defendants Talen and NorthWestern have and continue to occupy with their hydroelectric power and storage facilities (i.e., 'Phase 1'); and second, [Montana] seeks damages for past and ongoing occupation of the riverbeds quieted to the State of Montana (i.e. 'Phase 2')."   (*Id.* at 5.)   Therefore, "Phase 2 can only follow the natural conclusion of Phase 1, and the extent of damages Montana is entitled to under its [a]mended [c]omplaint are circumscribed by the extent of the river segments that [the] Court determined were navigable for title at the conclusion of Phase 1."   (*Id.*)   Montana contends that the Phase 1 Order is appealable because it determined the navigability and non-navigability of the river segments at issue and "completely extinguished the liability of [Talen and NorthWestern] for Montana's claims for damages on all river segments that this Court determined were non-navigable."   (Doc. 420 at 6.)

In response, Talen and NorthWestern argue that the Phase 1 Order was not a final judgment, and therefore, the order cannot properly be certified for appeal

under Rule 54(b).   (Doc. 424 at 5.)   Talen and NorthWestern rely on *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976), in which the United States Supreme Court explained that "[p]artial summary judgments are by their terms interlocutory, and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C.S. § 1291."   (Doc. 424 at 5.)   According to Talen and NorthWestern, the Court may not certify its decision as a final judgment under Rule 54(b) prior to a damages determination.   (*Id.* at 6.)

The Court agrees with Talen and NorthWestern that, ordinarily, a determination on liability without a decision on damages would not be a final appealable order.   However, the United States Supreme Court has cautioned against applying a bright line rule to 54(b) analyses.   For example, in *Gillespie v. United States Steel Corporation*, the United States Supreme Court explained that "the requirement of finality is to be given a practical rather than a technical construction;" therefore, "[i]n deciding the question of finality[,] the most important competing considerations are 'the inconvenience and cost of piecemeal review on the one hand and the danger of denying justice by delay on the other." 379 U.S. 148, 149 (1964).

Here, certification of Phase 1 does not present danger of denying justice by delay—it prevents it.   If the Court denied certification of Phase 1, and instead

conducted the Phase 2 trial on damages, the Ninth Circuit would need to review the Court's determinations on navigability following the Phase 2 trial. This could result in adjudication of Phase 2 twice—and potentially appeal of Phase 2 twice—which would delay final disposition of this matter. Therefore, even if "the review of this case by the [Ninth Circuit] could be called 'piecemeal,' it does not appear that the inconvenience and cost of trying this case will be greater because the [Ninth Circuit] decided the issues raised instead of compelling the parties to go to trial with them unanswered." *Id.* at 153.

Talen and NorthWestern further assert that the Phase 1 Order is not ripe for appeal because "liability and damages are not separate claims within the meaning of Rule 54(b)." (*Id.* at 7.) Talen and NorthWestern cite *Arizona State Carpenters Pension Trust Fund v. Miller,* where the Ninth Circuit announced, "[w]e join the Third Circuit in holding that 'when liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b)." 938 F.2d 1038, 1040 (9th Cir. 1991). The Court believes this case is distinguishable. In *Arizona*, the Ninth Circuit held that a claim for punitive damages is not separate from a claim for compensatory damages. *Id.* at 1040 ("It is plain that the Trust Funds' punitive damage count and their compensatory damage counts are inextricably intertwined…The punitive damage

count would only require proof of an additional aggravating factor and perhaps additional evidence relevant to assessing damages; thus, the punitive damage count is not a separate claim."). Here, in contrast, Montana presents two claims: first, it seeks title to the riverbeds of the disputed river segments; second, it seeks damages for Talen and NorthWestern's past and ongoing occupation of the riverbeds.

The claim for damages is "sufficiently independent of, and subordinate to, the issues presented [in Phase 1] to make the case in its present posture a proper one for review now." *Brown Shoe Co. v. United States*, 370 U.S. 294, 308 (1962). This was foreseen by the parties as indicated by their 2006 stipulation which provided a right to appeal "following final adjudication of the navigability claims." (Doc. 121-16 at 2.) Therefore, the Court finds that the claims satisfy the multiplicity requirement of Rule 54(b).

## II. No Just Reason for Delay

Next, Montana contends that the Court should enter final judgment on the Phase 1 Order because there is no just reason to delay appeal. (Doc. 420 at 7.) Specifically, Montana claims that certification of Phase 1 would promote efficient judicial administration and prevent duplicitous litigation. (*Id.* at 9–10.)

Talen and NorthWestern counterargue that denying Rule 54(b) certification would conserve judicial resources by ensuring efficiency and preventing piecemeal appeals. (Doc. 424 at 9–10.)

As Montana points out in its opening brief, "[t]he Ninth Circuit has instructed trial courts to direct entry of judgment under Rule 54(b) only after determining 'whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court' because '[a] similarity of legal or factual issues will weigh heavily against entry of judgment under the rule[.]'"   (Doc. 420 at 8 (quoting *Morrison-Knudson Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)).)   On appeal, the Ninth Circuit will analyze the Court's findings and conclusions regarding navigability of the relevant river segments.   In contrast, a review of Phase 2 would focus specifically on the Court's determination of damages.   These analyses would be factually and legally distinct and would not be duplicative.

The Court must also "take into account judicial administrative interests as well as the equities involved."   *Curtiss-Wright Corp.*, 446 U.S. at 8.   The Court should not grant Rule 54(b) certification in cases that are routine or uncomplicated; rather, Rule 54(b) certification is reserved for cases that are particularly complex. *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987).   The present matter is undoubtedly complex.   The Phase 1 trial required ten days of evidence and extensive posttrial briefing and there is nothing routine or uncomplicated about the navigability of the relevant river segments that

would alleviate the need for appellate review under Rule 54(b).

In addition, there is a strong judicial administrative interest in avoiding duplicative litigation. As highlighted by Fed. R. Civ. P. 1, the Court has a significant interest in securing a "just, speedy, and inexpensive determination of every action and proceeding." This action commenced in 2003, over two decades ago. Denying certification at this juncture would further delay disposition by creating a possibility of duplicitous trials and appeals. Therefore, the Court finds that there is no just reason to delay appeal of Phase 1 and entry of final judgment is proper under Rule 54(B).

## CONCLUSION

The Court's Phase 1 Order regarding liability/navigability of the relevant river segments is a final judgment of a single claim in a multiclaim action. There is no just reason to delay appellate review of the Phase 1 Order.

Accordingly, IT IS ORDERED that the motion (Doc. 420) is GRANTED. The Court's August 25, 2023, Findings of Fact, Conclusions of Law, and Order is certified as a final judgment under Rule 54(B).

DATED this 2nd day of January, 2024.

Dana L. Christensen, Chief District Judge
United States District Court